[Crim. No. 1374.  In Bank.—May 22, 1907.]

## In Re GEORGE D. COLLINS, on Habeas Corpus.

HABEAS CORPUS—PROCEEDINGS AFTER PETITION—PLEADING—TRAVERSE—BURDEN OF PROOF.—The function of a petition for a writ of *habeas corpus* is to secure the issuance of the writ, and when the writ is issued, the petition has accomplished its purpose.  The writ requires a return by the officer or other person having the custody of the prisoner.  To such return the petitioner may present exceptions, raising questions of law, or a traverse, raising issues of fact, or both.  Where the return is not subject to exception,—that is, where it sets forth process which on its face shows good ground for holding the prisoner, such process being produced at the hearing, and the traverse alleges matter tending to invalidate the apparent effect of such process,—the burden of proving such new matter is on the petitioner.  Adopting the analogy of pleadings in civil actions, the return is the complaint, the traverse is the answer; new matter set up in the traverse is deemed denied, and must be proved by the party alleging it.

CRIMINAL LAW—EXTRADITION—TRIAL FOR OTHER OFFENSE — OFFENSE COMMITTED SUBSEQUENT TO EXTRADITION.—So far as relates to international as distinguished from interstate extradition, it is the general rule that a prisoner extradited from a foreign country for a particular offense cannot be tried upon any other charge until his trial upon the original charge has been brought to a final conclusion, and he has had a reasonable time within which to return to the country from which he had been extradited.  Such rule, however, only applies to crimes alleged to have been committed prior to his extradition, and does not apply to crimes committed after his extradition in the country to which he was returned, and while his trial on the charge for which he was extradited remains undetermined.

ID.—TREATY OF 1889 BETWEEN UNITED STATES AND GREAT BRITAIN—EXTRADITION ACT OF CANADA—REVISED STATUTES.—Neither articles III nor IV of the extradition convention concluded between the United States of America and Great Britain in the year 1889, nor the Extradition Act of the Dominion of Canada, nor section 5275 of the Revised Statutes of the United States, exempts a person extradited from the province of British Columbia to the state of California from being tried in that state for a crime there committed subsequent to his extradition and while his trial on the charge for which he was extradited remains undetermined.

ID.—INTENT OF PARTIES TO TREATY—TREATY OF 1842.—Article III of that convention, providing that "no person surrendered by or to either of the high contracting parties shall be triable or tried for any crime or offense, committed prior to his extradition, other than the offense for which he was surrendered, until he shall have had an opportunity of returning to the country from which he was

surrendered,'' by limiting the exemption to crimes committed prior to extradition, indicates an intent on the part of the contracting parties that persons surrendered should not be exempt from prosecution for crimes subsequently committed. If under the treaty of 1842 between the United States and Great Britain there was any exemption for such subsequent crimes, the exemption was removed by the convention of 1889.

ID.—EXTRADITION ACT OF CANADA—SURRENDER IN CONTRAVENTION OF ACT.—The provision of the Extradition Act of the Dominion of Canada prohibiting the extradition of any person to any state or country ''in which, by the law in force in such state or country, such person may be tried after such extradition for any other offense than that for which he was extradited, unless an assurance shall first have been given by the executive authority of such state or country that the person whose extradition has been claimed shall not be tried for any other offense,'' only has the effect to lay down a rule for the government of officials of the Dominion of Canada. They may under this act have had the right to refuse to surrender an accused person without receiving the assurance referred to in the act. If they did surrender him without such assurance the rights of the United States and of the state of California after receiving the prisoner were limited only by the provisions of the treaty.

ID.—PERJURY ON TRIAL FOR PRIOR PERJURY—EFFECT OF JUDGMENT—HABEAS CORPUS.—A prisoner indicted for and convicted of perjury alleged to have been committed as a witness in his own behalf on his trial under an indictment for a prior charge of perjury, and which trial resulted in a disagreement of the jury, is not entitled to be discharged on *habeas corpus* on the ground that the perjury with which he was charged in the second indictment consisted in swearing to some of the same matters which formed the basis of perjury in the first indictment. Whatever might be the effect of an acquittal or conviction in one trial is matter of defense to be relied on in the other. It does not go to the jurisdiction and affords no ground for release on *habeas corpus*.

ID.—VOLUNTARY SURRENDER AFTER GIVING BAIL.—A prisoner arrested under an indictment and extradition proceedings thereunder who was released on bail and who thereafter voluntarily surrendered himself into custody and has not since given bail, and whose trial has not been unreasonably postponed against his objection, is properly held in custody under a bench warrant issued upon such indictment and extradition proceedings.

ID.—WRIT OF ERROR TO SUPREME COURT OF UNITED STATES—ADMISSION TO BAIL PENDING—EFFECT OF REMAND ON HABEAS CORPUS.—When, after a hearing upon his petition for a writ of *habeas corpus,* a prisoner has been remanded to the custody from whence he came, there is ordinarily no proceeding to be stayed pending a review of that order on writ of error to the supreme court of the United States. The prisoner is not thereafter held by virtue of the order

of remand, but by virtue of the warrant or other process upon which he was held at the time the writ of *habeas corpus* was issued, and the power to admit him to bail belongs exclusively to such officer, if any, as had the power to admit him to bail independent of the *habeas corpus* proceeding, and he must make his application for bail in the usual manner as provided by the laws of this state. [Per Beatty, C. J.]

APPLICATION for a Writ of Habeas Corpus directed to the Sheriff of the City and County of San Francisco.

The facts are stated in the opinion of the court.

George D. Collins, *in pro. per.*, for Petitioner.

William Hoff Cook, and Hiram T. Johnson, for Respondent.

SLOSS, J.—A writ of *habeas corpus* was issued on the application of George D. Collins, who claimed to be unlawfully restrained of his liberty by the sheriff of the city and county of San Francisco. A return was made and a hearing had.

Before proceeding to a consideration of the merits of the application, it may be well to here repeat what was orally stated at the hearing regarding the practice of this court on *habeas corpus*. The function of the petition is to secure the issuance of the writ, and, when the writ is issued, the petition has accomplished its purpose. The writ requires a return by the officer or other person having the custody of the prisoner. To such return the petitioner may present exceptions, raising questions of law, or a traverse, raising issues of fact, or both. Where the return is not subject to exception,—that is, where it sets forth process which on its face shows good ground for holding the prisoner, such process being produced at the hearing (Pen. Code, sec. 1480), and the traverse alleges matter tending to invalidate the apparent effect of such process,—the burden of proving such new matter is on the petitioner. The remarks in *In re Smith*, 143 Cal. 368, [77 Pac. 180], are to be taken as referring only to the case where, by agreement of the parties and the consent of the court, the petition is treated as a traverse to the return, and its averments are not disputed. The course of treating the petition as a traverse has frequently been followed in this court, but where it is followed it does not require the respondent to file, in addition to the

return, a pleading specifically denying the affirmative allegations of the petition (treated as a traverse) nor does it shift the burden of proof as to such allegations from the petitioner to the respondent. To adopt the analogy of pleadings in civil actions, the return is the complaint, the traverse is the answer; new matter set up in the traverse is deemed denied, and must be proved by the party alleging it.

In this case the petitioner filed exceptions to the return, which were overruled. He then filed a traverse. Evidence was taken, and the substantial facts disclosed are the following:—

On the thirteenth day of July, 1905, an indictment charging the petitioner with the crime of perjury alleged to have been committed in the city and county of San Francisco on the thirtieth day of June, 1905, was found by the grand jury and filed in the superior court of the city and county of San Francisco. Said indictment was designated in said superior court by number 16,130. After the alleged commission of said crime and prior to the finding of the indictment Collins had departed from the jurisdiction of said court and gone to the city of Victoria in the province of British Columbia, Dominion of Canada. Steps were duly taken to demand his surrender pursuant to the extradition treaty between the United States of America and Great Britain, and on the twenty-seventh day of October, 1905, Collins was surrendered and extradited, and removed from the city of Victoria to the city and county of San Francisco. Being there arraigned upon said indictment, he pleaded not guilty, and the case went to trial. Such trial resulted in a disagreement of the jury in the month of December, 1905, and a second trial has not since been had.

In the course of said trial the defendant became a witness and testified in his own behalf, making certain statements under oath which were, after the disagreement of said trial jury, made the basis of a second indictment for perjury found on the twenty-ninth day of December, 1905. This second indictment filed in the superior court, and numbered 16,415, charged Collins with having committed perjury in giving his testimony in his own defense on the twelfth day of December, 1905. The district attorney proceeded to trial upon the second indictment against the objection of Collins, and such trial

resulted in a verdict of conviction; whereupon judgment was pronounced. An appeal from the judgment was taken and is now pending in the district court of appeal.

The principal contention of the petitioner is that inasmuch as he was extradited from the Dominion of Canada upon a specific indictment, No. 16,130, the state of California could not try him upon any other charge until his trial upon the original charge had first been brought to a final conclusion, and he had been given a reasonable time within which to return to the country from which he had been extradited. So far as relates to international as distinguished from interstate extradition, this is undoubtedly the general rule. (*Commonwealth* v. *Hawes*, 13 Bush, 697, [26 Am. Rep. 242]; *State* v. *Vanderpool*, 39 Ohio St. 273, [48 Am. Rep. 431].) The subject was very fully considered by the supreme court of the United States in the leading case of the *United States* v. *Rauscher*, 119 U. S. 407, [7 Sup. Ct. 234], where the court, after considering all of the authorities then existing, reached the conclusion that under a treaty of extradition providing for the surrender of persons accused of specific crimes, taken together with sections 5272 and 5275 of the Revised Statutes, (U. S. Comp. Stats. 1901, pp. 3595, 3596) "a person who has been brought within the jurisdiction of the court by virtue of proceedings under an extradition treaty can only be tried for one of the offenses described in that treaty, and for the offense with which he is charged in the proceedings for his extradition, until a reasonable time and opportunity have been given him, after his release or trial upon such charge, to return to the country from whose asylum he had been forcibly taken under those proceedings."

In the Rauscher case, as well as in every other case that has been called to our attention, the crime for which it was sought to try the extradited prisoner was one alleged to have been committed prior to his extradition. In the present case, on the contrary, the crime with which Collins was charged and of which he was convicted was committed after his surrender by the authorities of the country in which he had sought a refuge, and after his return to the state of California.

The question is whether the immunity against prosecution for another offense, declared in *United States* v. *Rauscher* and similar cases, extends to an offense committed subsequent to

the extradition. No doubt there is language in *United States* v. *Rauscher*, general in its terms, which, taken without regard to the facts before the court, would lend countenance to the view that the prisoner is, until the conclusion of his trial for the offense on which he was extradited, and for a reasonable time thereafter, absolutely immune from prosecution on any other charge. It is an elementary doctrine, however, that expressions in judicial opinions are to be read in the light of the facts before the court, and it is necessary, therefore, to consider the grounds upon which the decision in this class of cases went in order to determine whether those grounds are applicable to the case of a crime committed after the extradition.

The reasoning of *United States* v. *Rauscher* is substantially this: That in the absence of treaty there is no obligation upon any country to surrender to another persons who are charged with crime in the latter country. That as a matter of comity such surrender might be made, but that if made in pursuance of a demand or request for the surrender of a person accused of a specific crime, there is an implied undertaking on the part of the country receiving the surrender that such surrender is asked and received for the purpose of putting the accused on trial for that crime and for no other purpose. When a treaty is adopted, providing for the surrender of persons accused of specific crimes, the same implied obligation exists, more particularly in view of the provision generally found in treaties of extradition that before any surrender shall be made there must be some proof of the commission of the offense. To permit a country to seek the extradition of a person found in another country upon the ground that he is charged with the commission of a specific offense covered by an extradition treaty, and then, when his surrender has been granted upon that ground, to try him for some other offense would make it possible to evade the provisions of the treaty, and to use it as a pretense for securing possession of the person of a prisoner whom it was not designed to try for the charge upon which his extradition was nominally sought, but for some other offense which might or might not be in itself extraditable. In the language of the court in the case under consideration, "it is impossible to conceive of the exercise of jurisdiction in such a case for any other

purpose than that mentioned in the treaty, and ascertained by the proceedings under which the party is extradited, without an implication of fraud upon the rights of the party extradited and of bad faith to the country which permitted his extradition.''

The doctrine, then, seems to rest ultimately upon the view that the treaty of extradition is intended to provide for the surrender of persons who may have fled from one country to another after committing one of a number of designated crimes, and that it would be a breach of international faith to use the provisions of this treaty for any other purpose than the one which is stated in the demand for the surrender,— namely, that the prisoner may be put upon his trial for the specific offense designated in the proceedings. In the absence of this limitation, it would be possible to make up a fictitious case coming nominally within the terms of the treaty, and, having secured possession of the prisoner, to then disregard the charge upon which he was extradited, and proceed to try him upon some other offense which could not have been made the basis of extradition, because not covered by the treaty, or a charge on which extradition, even if the crime charged was named in the treaty, might have been refused.

But no such considerations apply to the case of an offense committed after the surrender and return of the accused. While it may be the policy of a country in which a person has taken refuge to grant him the right of asylum except as against a specific charge of a crime covered by a treaty of extradition, such country, after it has once extradited him, cannot be concerned in securing for him immunity for new crimes committed after his return to the demanding country. The obligation assumed by the country demanding the surrender is that such surrender will not be used for the purpose of putting the prisoner on trial for any other offense which he may be claimed to have committed before he sought the asylum of the foreign country, but we cannot see that there would be any breach of international faith in compelling him, in common with other persons within the jurisdiction, to assume responsibility for any offense which he may commit after his return. In such case there is no possibility of the extradition proceedings being used as a subterfuge to pursue the accused for an offense other than the one for

which he was extradited. In the absence of any authority
compelling such conclusion, we are not prepared to hold that
a person extradited under a treaty may, after his return,
and pending his trial upon the extradition charge, commit
any crime, however atrocious, with absolute security against
prosecution until he shall have had an opportunity to return
to the country from which he was taken.

The immunity of an extradited prisoner from prosecution
for any offense other than the one for which he was extradited
rests not upon any absolute right in him to have an asylum
in the land in which he has taken refuge, but primarily upon
the rights of the sovereignty which has surrendered him, and
has done so pursuant to a treaty. This is illustrated by the
many cases holding that where an accused is forcibly seized
in another country and transferred by violence, force, or
fraud to this country, without resort to any extradition treaty,
he cannot rely on the circumstances of his removal to defeat
his prosecution and trial when here. (*Ex parte Scott,* 9
Barn. & C. 446; *Lopez & Sattler's Cases,* 1 Dearsley & B.
(Eng.) C. C. 525; *State* v. *Smith,* 1 Bailey, (S. C.)
283, [19 Am. Dec. 679]; *State* v. *Brewster,* 7 Vt. 118; *Dow's
Case,* 18 Pa. 37; *State* v. *Ross,* 21 Iowa, 467; *The Rich-
mond* v. *United States,* 9 Cranch, 102. See, also, *Ker* v.
*Illinois,* 119 U. S. 436, [7 Sup. Ct. 225]; *In re Mahon,* 34
Fed. 525.)

"The fundamental principle upon which the doctrine of
these cases rests, is this: The criminal himself never acquires a
personal right of asylum or refuge from the consequences of
his crime anywhere. The government of the state or country
to which he flees may insist that he shall not be extradited
from there unless by its consent and under such conditions
as it shall assent to." (Hawley on International Extradi-
tion, 15.)

In the Rauscher case itself there are one or two expressions
indicating that the court intended to limit the doctrine de-
clared to cases of offenses committed prior to the extradition.
In speaking of the right of the accused, the court says: "That
right, as we understand it, is that he shall be tried only for
the offense with which he is charged in the extradition pro-
ceedings and for which he was delivered up; and that if not
tried for that, or after trial and acquittal, he shall have a

reasonable time to leave the country before he is arrested upon the charge of any other crime *committed previous to his extradition.*"

And at another place the opinion refers to the immunity from arrest, trial, and conviction for a crime "not enumerated in the extradition treaty *and committed before his removal.*" (The italics are ours.)

Much force is added to the view that the accused is not protected from prosecution for crimes committed subsequent to his extradition by a consideration of the terms of the treaty under which Collins was surrendered.

The treaty involved in the Rauscher case was that of 1842 with Great Britain. That treaty merely provided for the surrender by the respective contracting governments of persons charged with certain enumerated crimes, the surrender to be made upon such evidence of criminality as would justify arrest and commitment for trial in the country which was asked to surrender the accused. There was no express limitation as to the crimes for which the accused might be tried after surrender. Such limitation was held by the court to be implied in the nature of the treaty itself, and there was no occasion to define its precise extent.

In 1889 the United States of America and Great Britain concluded an extradition convention which, after referring to the treaty of 1842, made certain further provisions. Article III of the treaty of 1889 (26 Stats. 1509) reads as follows: "No person surrendered by or to either of the high contracting parties shall be triable or tried for any crime or offense, committed prior to his extradition, other than the offense for which he was surrendered, until he shall have had an opportunity of returning to the country from which he was surrendered." By this provision the contracting governments reduced to an express and definite agreement the exemption which had been before implied. It seems clear that in limiting the exemption to crimes committed prior to extradition, the contracting parties indicated their intent that persons surrendered should not be exempt from prosecution for crimes subsequently committed. If under the former treaty there was any exemption for such subsequent crimes (which, as we have said, was not in our opinion the case) such exemption was removed by the new treaty.

It is urged that the effect of article III of the treaty with Great Britain is modified by the provisions of article VI of the same treaty, providing that "The extradition of fugitives under the provisions of this convention and of the said tenth article (of the treaty of 1842), [8 Fed. Stats. Ann., p. 576], shall be carried out in the United States and her majesty's dominions, respectively, in conformity with the laws regulating extradition for the time being in force in the surrendering state." We are not furnished with any copies of the laws of the Dominion of Canada and none are at the present time accessible to us. On the hearing the petitioner, after qualifying as a witness regarding the laws of Canada, testified that the Extradition Act of Canada provided that, "This act shall not authorize the issue of a warrant for the extradition of any person under the provisions of this statute, to any state or country in which, by the law in force in such state or country, such person may be tried after such extradition for any other offense than that for which he was extradited, unless an assurance shall first have been given by the executive authority of such state or country that the person whose extradition has been claimed shall not be tried for any other offense than that on account of which such extradition has been claimed."

For the reasons already stated we do not think that this statute was intended to protect persons surrendered from trial for subsequent offenses, but if it was, its only effect was to lay down a rule for the government of officials of the Dominion of Canada. They may, under this act, have had the right to refuse to surrender the accused without receiving the assurance referred to in the act. If they did surrender him without such assurance, the rights of the United States and of the state of California after receiving the prisoner were limited only by the provisions of the treaty, and that treaty, as we have seen, did not prevent trial for a subsequent offense.

In this connection it may be observed that the petition for the writ of *habeas corpus* alleged as a fact that the warrant of extradition issued by the Canadian government, and upon which the prisoner was returned to this country, contained an express provision that the petitioner "should not be tried or triable for or on account of any other offense than the one

upon which such extradition shall be granted . . . until after the final conclusion of his trial for said offense and until his final discharge from custody or imprisonment for or on account of such offense, and thereafter, until he has had a reasonable opportunity of returning to the country from which he was taken on said extradition.'' The original warrant was destroyed in the conflagration of April 18, 1906. Without deciding that the language quoted, if inserted in the warrant, would affect the right of the state to try the accused on the second indictment, it is sufficient to say that the evidence taken on the hearing absolutely negatives the claim of the petitioner and shows conclusively that no such language was inserted in the warrant.

There is, in our opinion, nothing in the provisions of section 5275 of the Revised Statutes of the United States, [U. S. Comp. Stats. 1901, p. 3596], which conflicts with the views herein expressed.

It is further contended by petitioner that the perjury with which he was charged in the second indictment consisted in swearing to some of the same matters which formed the basis of the charge of perjury in the first indictment. From this it is argued that a verdict of acquittal on the first charge would be conclusive in favor of the defendant on any subsequent trial. (*United States* v. *Butler,* 38 Fed. 498; *Coffey* v. *United States,* 116 U. S. 436, [6 Sup. Ct. 432]; *Cooper* v. *Commonwealth,* 106 Ky. 909, [90 Am. St. Rep. 275, 51 S. W. 789].) Similarly, it is claimed, a verdict of conviction on the first charge would preclude a conviction on the other. We need not decide whether the principle invoked has any application to the facts here presented. In any event, such acquittal or conviction in one trial, is matter of defense to be relied on in the other. It does not go to the jurisdiction, and affords no ground for release on *habeas corpus.*

For these reasons we are satisfied that the state of California did not violate any treaty obligation of the United States, or any right of the accused, in putting him to trial upon the second indictment, and that he is properly held in custody by the sheriff pursuant to the judgment of conviction.

The sheriff also claims to hold the petitioner by virtue of a bench warrant issued upon the first indictment,—namely, the one which was the basis of the extradition proceedings. As

to this the petitioner claims to have been released on bail. The destruction of the public records of the city and county of San Francisco in the conflagration of April, 1906, makes it difficult to determine the truth of this claim. The evidence upon it is conflicting. We have reached the conclusion that the weight of evidence is to the effect that the prisoner, after having given bail upon this charge, voluntarily surrendered himself into custody and that he has not since given bail.

Nor has he offered any evidence in support of his allegation that his trial on this charge has been unreasonably postponed against his objection and that the prosecution has no *bona fide* intention of putting him to trial on this indictment. He is therefore properly in custody of the sheriff on the bench warrant issued under the indictment in case 16,430, and the extradition proceedings thereon, as well as the judgment of conviction in case 16,415.

Petitioner is remanded to the custody of the sheriff to be held in pursuance of process in both cases.

Henshaw, J., McFarland, J., Shaw, J., Angellotti, J., Lorigan, J., and Beatty, C. J., concurred.

The petitioner subsequently applied for a writ of error to enable him to secure a review of the record in this proceeding by the supreme court of the United States. In allowing the writ the chief justice rendered the following opinion on the twelfth day of June, 1907:—

BEATTY, C. J.—Having allowed the prisoner a writ of error to enable him to secure a review of the record in this proceeding by the supreme court of the United States, and having been requested to order that the writ operate as a *supersedeas*, I desire to state my reason for specially limiting the operation of the order.

In certain cases of recent origin in this state in which prisoners in custody under process of the superior court have been remanded after a hearing upon *habeas corpus* in another court, or before a different judge, upon the ground that the imprisonment was lawful, the judge making the order of remand has allowed a writ of error and ordered a *supersedeas* which he has construed as empowering him to admit the

prisoner to bail. The order which I make in this case is not to be understood by any judge to whom an application for bail may be made as having such effect. When after a hearing upon his petition for a writ of *habeas corpus* a prisoner has been remanded to the custody from whence he came, there is ordinarily no proceeding to be stayed pending a review of that order. The prisoner is not thereafter held by virtue of the order of remand, but by virtue of the warrant or other process upon which he was held at the time the writ of *habeas corpus* was issued, and the power to admit him to bail belongs exclusively to such officer, if any, as had the power to admit him to bail independent of the *habeas corpus* proceeding, and he must make his application for bail in the usual manner as provided by the laws of this state.