Opinion
SULLIVAN, J.
James W. Saunders, presently in the lawful custody of the Sheriff of Los Angeles County, seeks a writ of habeas corpus on the ground that he was denied the right to the effective assistance of counsel at his trial.
After a trial by jury petitioner was found guilty of first degree murder (Pen. Code, §§ 187, 189), first degree robbery (Pen. Code, §§ 211, 211a), and assault with intent to commit murder (Pen. Code, § 217). The jury fixed the penalty on the murder count at death. By judgment dated April 7, 1965, petitioner was sentenced to death on the murder count and to state prison for the term prescribed by law on the other counts. On automatic appeal the judgment was affirmed in its entirety by this court. (People v. Hill and *1036 Saunders (1967) 66 Cal.2d 536 [58 Cal.Rptr. 340, 426 P.2d 908].) However, in In re Saunders (reported sub nom. In re Hill) (1969) 71 Cal.2d 997 [80 Cal.Rptr. 537, 458 P.2d 449], we determined that error of the type condemned in Witherspoon v. Illinois (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770] had occurred in the trial; we therefore granted a writ of habeas corpus, recalled the remittitur in People v. Hill, reversed the judgment insofar as it related to penalty, and remanded for a new penalty trial.[1] By order of the trial court petitioner was removed to the custody of the Sheriff of Los Angeles County to await the new penalty trial.
We have issued an order to show cause and have stayed the new penalty trial pending determination of this proceeding. We have also appointed counsel to represent petitioner before this court.
It is petitioner’s contention that his convictions were obtained in violation of his constitutional right to the effective assistance of counsel in that his appointed trial counsel failed to consider, investigate, and present available evidence tending to establish his diminished capacity to commit the charged crimes. (See People v. Conley (1966) 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911]; People v. Gorshen (1959) 51 Cal.2d 716 [336 P.2d 492]; People v. Wells (1949) 33 Cal.2d 330 [202 P.2d 53].)
1. The Undisputed Facts
We first set forth undisputed facts relevant to this contention as they appear from exhibits and records on file in this court.[2]
(1) On October 22, 1964, a Los Angeles attorney was appointed to represent petitioner at trial, which was scheduled to commence on February 8, 1965.
(2) On December 8, 1964, petitioner’s mother, a resident of Florida, directed an apparently unsolicited letter to counsel with the expressed intention of informing him of certain facts in petitioner’s background. The letter stated in substance that petitioner was a “normal boy growing up in a nice home” until, a few years prior to the incident for which he was to be tried, he suffered a fractured skull and two brain concussions; that these injuries had the effect of triggering “eratic [szc] behavior” on petitioner’s part; that three brain wave tests administered to petitioner following these injuries showed slight organic brain damage; that the doctor who had treated *1037 petitioner explained “that at times he will be perfectly normal and then ... at times ... he does not know the difference from right or wrong”; and that hospital records showed that petitioner had “a type of epilepsy.” The letter also stated that petitioner was 19 years of age.
(3) Counsel did not answer the letter. Nor did he make any effort to himself contact the doctor named by Mrs. Saunders or to himself obtain petitioner’s medical records.
(4) On December 10, 1964, petitioner directed a letter to counsel which indicated that petitioner had “made arrangements to have complete medical and mental diagnosis sent to your offices for whatever help it may be.”
(5) The trial began on February 8, 1965. Counsel presented no evidence in petitioner’s behalf. The defense was directed solely toward excluding from evidence two extrajudicial admissions of petitioner, the second of which clearly indicated that petitioner knew that a robbery was planned when he drove his two codefendants to the liquor store which was the scene of the murder and waited outside for them in the car.[3] Counsel’s efforts to prevent the admission of these statements were unsuccessful. The guilt phase of the trial concluded on March 5, 1965, when the jury found petitioner and his two codefendants guilty of the charged crimes.
(6) On March 5, 1965 (the date of the guilt verdicts) Dr. Sidney J. Merin, a Florida clinical psychologist, sent to petitioner’s counsel a letter and several medical reports dealing with petitioner.[4] The letter stated that petitioner was first examined in 1961 and, there being some question as to organic brain damage, an electroencephalographic study was made. The enclosed report of that study concluded: “Abnormal electroencephalogram denoting a focal encephalopathy predominantly right frontal.” Dr. Merin’s letter went on to say that at that time (1961) petitioner manifested rebellious and “negativistic” symptoms and that psychotherapy and treatment in a “residential educational treatment center” was recommended. However, family financial circumstances rendered inpatient treatment impossible and outpatient group therapy and chemotherapy were utilized— apparently to little effect. According to Dr. Merin, he saw petitioner again in 1964 (apparently shortly before petitioner came to California) but then noted little improvement. The letter concluded: “This is a young man who will probably continue to come into conflict with the law until an adequate and sustained treatment program is developed for him. James was in group therapy with me for a short while as well as in individual *1038 treatment. Because of the nature of the character disorder or antisocial activity, little could be done in the short period of time I had with him. He certainly needs continued psychological help but there is no guarantee that he will not continue in antisocial behavior while he is being helped. The nature of this type of personality is such that considerable time is required to redevelop or repattern his characteristic mode of behavior.”
(7) Counsel made no effort to reopen the guilt phase of the trial on the basis of the materials received from Dr. Merin.
(8) The penalty phase of the trial began on March 8, 1965.
(9) On March 9, 1965, petitioner’s mother sent to counsel records substantiating that petitioner was 19 years old at the time of the offense. In the accompanying letter Mrs. Saunders again maintained that a marked personality change occurred in petitioner following the second concussion suffered by him prior to 1961.
(10) At the penalty phase of the trial, counsel offered no evidence in mitigation of penalty and called no witnesses in petitioner’s behalf.[5] His argument in favor of life imprisonment rather than death was wholly based upon the fact that petitioner was not an actual participant in the killing.
(11) On March 11, 1965, the jury returned a verdict of death as to petitioner Saunders.
(12) On April 7, 1965, petitioner’s motion for reduction of penalty was denied. In the course of its ruling the trial court stated: “If there is a question of law involved, if there is a question of some mental deficiency involved here, if I felt that the mental state of this defendant was such that he could not deliberate, could not form the intent to commit the robbery which resulted in the murder, I wouldn’t hesitate to overturn the verdict of the jury; but under the facts in this case I find no justification for disturbing their verdict, . . . and the motion to reduce the penalty is denied.”
(13) The same attorney was appointed by this court to represent petitioner on his automatic appeal. On October 10, 1966, while the matter was pending on appeal, petitioner wrote to counsel and stated: “I understand that two weeks prior to my trial you were sent the medical and psychiatric reports and history of myself. I have just learned of this three weeks ago. Why was it not mentioned to me? Why was it not used in the penalty trial? My source of information on this matter was [Dr. Merin] and also my Mother.” Counsel replied on October 21, 1966, to this effect: “It is true that I did receive medical and psychiatric reports with regard *1039 to your case. I am certain that I did mention it to you and felt that it would in no way assist at the trial of your case.”
(14) The matter which petitioner now seeks to raise was not adverted to in any way in the proceedings before this court relative to petitioner’s automatic appeal. On April 27, 1967, this court affirmed the judgment against petitioner Saunders in its entirety.
(15) In June of 1967 petitioner substituted attorney J. Perry Langford in place of trial counsel. When trial counsel sent the records in the case (including the reports sent by Dr. Merin) to Langford, he included a cover letter which stated: “I would like to call to your attention the fact that I did not use the doctor’s reports or birth certificates anywhere in the court below or on appeal. It was being saved as insurance on a clemency hearing—and I hope it pays off. The significance of the birth certificate is that it would make Saunders 20 at the time of the crime, rather than 25 as he claimed. It might well be of substantial value.” There has never been an application for clemency made in this matter.
(16) Attorney Langford prepared a petition for writ of certiorari in petitioner’s behalf which was denied on December 4, 1967. (Saunders v. California (1967) 389 U.S. 993 [19 L.Ed.2d 487, 88 S.Ct. 492].) The matter now sought to be raised was not advanced in the certiorari petition.
(17) On April 8, 1968, petitioner in propria persona filed his petition for a writ of habeas corpus in In re Saunders (reported sub nom. In re Hill), supra, 71 Cal.2d 997. He filed an amendment to the petition in propria persona on July 25, 1968, and a further amendment was filed on his behalf by attorney Michael Ballachey on August 9, 1968. After issuance of an order to show cause and the filing of a return thereto, Mr. Ballachey filed a memorandum in answer to the return. As our opinion in that habeas corpus matter reflects, numerous contentions of constitutional dimension were raised by petitioner and his then attorney. However, the matter now sought to be raised was not then advanced.
(18) Following our decision in the habeas corpus proceeding petitioner, pursuant to our order, was remanded to the custody of the trial court for a new penalty trial. The trial court again appointed the former trial counsel to represent petitioner in the new penalty trial. On December 8, 1969, petitioner in propria persona moved to relieve that attorney as his counsel and to proceed in propria persona at the new penalty trial. In support of his motion petitioner filed a declaration which related his discovery in 1966 that counsel had been provided with “medical and psychiatric re *1040 ports prior to trial” and that such reports had not been used at trial. The declaration went on to describe counsel’s response to petitioner’s inquiry on the matter (see par. (12), ante), and alleged in addition that petitioner had not realized the legal significance of these reports until December of 1967, when he became familiar with the decisions of this court in People v. Gorshen, supra, 51 Cal.2d 716, and People v. Wells, supra, 33 Cal.2d 330, and that since that time he had made diligent efforts to obtain new counsel “for the purpose of investigating the above mentioned medical and psychiatric records and the possibility of raising the question of trial counsel’s competence, . . .” Finally, the declaration alleged: “That on three recent occasions, your declarant has spoken with court-appointed counsel concerning his failure to utilize the above mentioned medical and psychiatric reports [and] [t]hat on all three occasions your declarant was advised by counsel that he never considered nor investigated the possibility of using the above mentioned medical and psychiatric reports in either the guilt or penalty phase of your declarant’s trial.” (Italics added.) At the hearing on the motion counsel stated: “Well, your Honor, as to the declaration of Mr. Saunders, I would say in the main it is true; I don’t feel this is an appropriate time or place to comment on it.” The motion to relieve counsel was granted and petitioner was allowed to proceed in propria persona in the new penalty trial.
(19) In December of 1969 petitioner obtained the services of his present attorney, Don Edgar Burris, who prepared and filed the instant petition on his behalf in January of 1970.
2. Preliminary Matters
Before considering certain areas of factual dispute and the legal principles here applicable, we find it convenient at this point to dispose of certain preliminary matters. We reject the suggestion of the People that the issue sought to be raised has not been presented in a timely manner. Although almost five years elapsed between the judgment of conviction and the filing of the instant application, such delay is sufficiently explained by petitioner’s allegations that he had only a ninth grade education and was without experience or education in law; that until October 1966 he did not know that trial counsel had received medical records prior to or during the trial; that even after he received such information he was unable to make use of it because he did not have access to his complete medical records and because he was unaware of the applicable law; that he did not learn of the doctrine of diminished capacity until December 1967 and immediately thereafter assiduously sought the assistance of new counsel in securing and reviewing the medical and psychiatric records relevant to the issue now presented; and that the said records were not acquired until early in 1970 *1041 when petitioner was able to obtain the services of his present attorney Mr. Burris. (See In re Perez (1966) 65 Cal.2d 224, 228 [53 Cal.Rptr. 414, 418 P.2d 6]; In re James (1952) 38 Cal.2d 302, 309 [240 P.2d 596]; cf. In re Swain (1949) 34 Cal.2d 300, 304 [209 P.2d 793].)
We also note that the question here sought to be raised—i.e., the constitutional adequacy of trial counsel—is wholly moot as to issues of penalty, for a new penalty trial has already been ordered by this court (In re Saunders (reported sub nom. In re Hill), supra, 71 Cal.2d 997), and the matter of petitioner’s mental capacity as it relates to penalty considerations can be fully exposed when and if such a proceeding takes place in the future.[6] Thus, our inquiry .in this case is solely whether petitioner is entitled to a new trial on the basic issue of guilt.
3. The Applicable Legal Principles
The constitutional right to the assistance of counsel in a criminal case (U.S. Const., 6th Amend., 14th Amend.; see. Gideon v. Wainwright (1963) 372 U.S. 335, 342 [9 L.Ed.2d 799, 804, 83 ’S.Ct. 792, 93 A.L.R.2d 733]) includes the guarantee that such assistance be “effective.” (See Powell v. State of Alabama (1932) 287 U.S. 45, 72 [77 L.Ed. 158, 172, 53 S.Ct. 55, 84 A.L.R. 527]; People v. Ibarra (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) That “effective” counsel required by due process, however, is not errorless counsel; rather, it is counsel “reasonably likely to render, and rendering reasonably effective assistance.” (MacKenna v. Ellis (5th Cir. 1960) 280 F.2d 592, 599, modified 289 F.2d 928; Brubaker v. Dickson (9th Cir. 1962) 310 F.2d 30, 37; People v. McDowell (1968) 69 Cal.2d 737, 748 [73 Cal.Rptr. 1, 447 P.2d 97]; In re Williams (1969) 1 Cal.3d 168, 176 [81 Cal.Rptr. 784, 460 P.2d 984].)
Although the determination of whether the demands of due process have been met in a particular case is always “a question of judgment and degree” to be answered in light of all of the circumstances and with a view to “fundamental fairness” (Brubaker v. Dickson, supra, 310 F.2d 30, 37; see People v. Ibarra, supra, 60 Cal.2d 460, 464-465; People v. McDowell, supra, 69 Cal.2d 737, 748-749), certain general standards have evolved for the aid of the court making this determination. Fundamental among these is that which places upon counsel the duty to conduct careful factual and legal investigations and inquiries with a view to developing matters of defense in order that he may make informed decisions on his client’s behalf both at the pleading stage (see Von Moltke v. Gillies (1948) 332 U.S. *1042 708, 721 [29 L.Ed. 309, 319, 68 S.Ct. 316]; In re Williams, supra, 1 Cal.3d 168,174-176; Wilson v. Rose (9th Cir. 1966) 366 F.2d 611; Kott v. Green (N.D. Ohio 1968) 303 F.Supp. 821) and at trial (Brubaker v. Dickson, supra, 310 F.2d 30; People v. McDowell, supra, 69 Cal.2d 737; People v. Ibarra, supra, 60 Cal.2d 460; People v. Welborn (1967) 257 Cal.App.2d 513 [65 Cal.Rptr. 8]). If counsel’s “failure [to undertake such careful inquiries and investigations] results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled.” (People v. Ibarra, supra, 60 Cal.2d 460, 464; see In re Williams, supra, 1 Cal.3d 168, 175; Brubaker v. Dickson, supra, 310 F.2d 30, 38-40.)[7]
In Brubaker v. Dickson, supra, 310 F.2d 30—which has been quoted with approval by this court in Ibarra, McDowell and Williams—a prisoner sought habeas corpus on grounds identical to those here advanced. It there appeared that counsel had been made aware of the' defendant’s history of head injury and of heavy drinking in which the defendant had indulged on the night of the crime. Nevertheless, he made no effort to ascertain the defendant’s specific medical history or to present a defense based upon it. After the judgment of conviction had become final and the defendant was in San Quentin, electroencephalographic examinations revealed organic brain damage, and further investigation produced medical history containing episodes of head injury and infantile illness which could have caused the damage. Medical opinion indicated that the defendant was “definitely seizure prone” and was “of a type often associated with abnormal and otherwise unexplainable conduct”; that while not insane, the defendant had a “compulsive personality marked by strong emotional instability”; and that the defendant had a hypersensitivity to alcohol. (310 F.2d at pp. 32-33.)
The United States Court of Appeals held that a violation of the defendant’s right to the effective representation of counsel had been sufficiently alleged: “Upon an examination of the whole record, we conclude that appellant alleged a combination of circumstances, not refuted by the rec *1043 ord, which, if true, precluded the presentation of his available defenses to the court and jury through no fault of his own, and thus rendered his trial fundamentally unfair. Appellant does not complain that after investigation and research trial counsel made decisions of tactics and strategy injurious to appellant’s cause; the allegation is rather that trial counsel failed to prepare, and that appellant’s defense was withheld not through deliberate though faulty judgment, but in default of knowledge that reasonable inquiry would have produced, and hence in default of any judgment at all. The omissions alleged by appellant ‘were not mere mistakes of counsel or error in the course of the trial. If true, they constituted a total failure to present the cause of the accused in any fundamental respect. Such a proceeding would not constitute for the accused the fair trial contemplated by the due process clause. . . (Fns. omitted.) (Italics added.) (310 F.2d 30, 38-39; see also People v. Ibarra, supra, 60 Cal.2d 460, 464-466.)
4. The Disputed Facts
It is with the foregoing principles in mind that we proceed to consider those aspects of this case which are subject to conflicting allegations on the record. (See fn. 2, ante.)
a. The petition
The pivotal allegation in the instant petition for a writ of habeas corpus is that petitioner “was deprived of effective assistance of counsel because [trial] counsel’s failure to consider, investigate, and present said counsel’s pretrial knowledge/evidence of petitioner’s background of severe head injuries, causing brain damage which required extended psychotherapy and chemotherapy, resulted in the withdrawal of crucial defenses from both the guilt and penalty [8] phase of the case.” (Italics added.)
In support of this allegation petitioner marshals the bulk of those undisputed factual matters which we have tabulated above. (See Part 1, ante) Additionally, in a declaration attached to the petition, petitioner states inter alia that he does not recall and does not believe that trial counsel “ever discussed his [affiant’s] past history of head injuries and psychiatric disorder with him; that he spoke with counsel on three occasions in the month preceding his (petitioner’s) motion to relieve the latter as petitioner’s counsel at the new penalty trial and “on all three occasions, trial counsel advised affiant that he never considered or investigated the possibility of using the psychiatric and medical reports”; that from the date of his arrest until the date of the declaration petitioner “has never been examined by *1044 a psychiatrist or a psychologist”; and that petitioner did not become aware of his mother’s letter of December 8, 1964, to trial counsel (summarized in par. (2) of Undisputed Facts; see Part 1, ante) until after trial counsel had been relieved on the new penalty trial in December 1969.
b. The return
The return to the order to show cause alleges generally that petitioner’s detention is proper in that there was no denial of the right to the effective assistance of counsel, and specifically that trial counsel “did thoroughly investigate and consider the use of the medical evidence of petitioner’s past medical history in the guilt phase of the trial, but on the basis of defense strategy and judgment as to the quality of such evidence he determined that the evidence would in no way assist in the trial of petitioner’s case.” [9]
Attached to the return is the declaration of petitioner’s trial counsel. This document states at the outset that pursuant to his appointment as counsel for petitioner he visited the latter in the county jail on eight different occasions prior to trial and also spoke with petitioner on-four other occasions during pretrial court appearances. The declaration then goes on to state:
“5. During the above described interviews with Mr. Saunders, and in his preparation for trial which included an examination of the complete District Attorney’s file, your declarant became very familiar with the evidence possessed by the People, as well as the facts surrounding the crimes with which Mr. Saunders and his co-defendants were charged.
“6. Your declarant, during the months of October, November,- and December, was made aware of Mr. Saunders’ prior mental and physical problems. These were subjects discussed by Mr. Saunders and your declarant at some considerable length during the latter part of 1964 and early months of 1965. As a matter of fact, these conversations resulted in my requesting that Mr. Saunders make arrangements to have his medical records forwarded to me. He informed me by letter dated December 10, 1964, that such arrangements had been made.
“7. Mr. Saunders’ description of his psychiatric history to me was very much the same as that contained in the doctor’s letters which are Exhibit B in the Petition for Writ of Habeas Corpus [i.e., the letter and reports sent by Dr. Merin on March 5, 1965]. Your declarant also spoke with Mr. Saunders’ mother on the telephone relative to her December 8, 1964, letter, *1045 Exhibit A, and especially with regard to the alleged physical damage. Although your declarant cannot recall said discussions with Mr. Saunders and his mother with any degree of clarity, he must have assured himself that Mr. Saunders was under no physical disability at the time of the alleged crimes with which he was charged.
“8. At the time of my appointment to represent Mr. Saunders, I was familiar with the doctrine of People v. Wells (1949) 33 C.2d 330, and People v. Gorshen (1959) 51 C.2d 716, i.e., in a trial where a not guilty plea has been entered (as contrasted to the situation where there are pleas of not guilty and not guilty by reason of insanity), evidence of a mental condition which would negate specific intent is admissible on the issue of guilt. In your declarant’s opinion, prior to and during the trial of the case in 1965 which was based upon his examination of the District Attorney’s file as well as his numerous conversations with Mr. Saunders, the so-called Wells-Gorshen doctrine had no place in the trial of Mr. Saunders’ case. Your declarant was also convinced that Mr. Saunders was not legally insane or suffering from any Wells-Gorshen type of mental condition.
“9. Your declarant considered the advisability of requesting a court appointed psychiatrist, but decided against it for the following reasons:
“a. As a matter of strategy, your declarant believed Mr. Saunders had an excellent chance for acquittal if both or at least one of his admissions could be kept out of evidence. It must be recalled that Saunders’ part in the robbery murder was that of a lookout and driver with no direct evidence of his participation therein except for said admissions. Prior to Mr. Madorid’s[10] testimony, your declarant had no knowledge of his intention to take the stand. Under these circumstances, where Saunders was alleged to be a getaway driver and indirect participant, your declarant did not believe psychiatric testimony would be either relevant or helpful.
“b. The entire thrust of the defense for Mr. Saunders, prior to the testimony of Mr. Madorid was to keep from the jury the admissions of Mr. Saunders and more particularly, his second admission that he knew there was going to be a robbery. If a court appointed psychiatrist were called to testify during the guilt phase, then Saunders’ admissions to him could be included in his testimony. This, in your declarant’s opinion, would far outweigh any possible benefits to be obtained from such testimony. Again, your declarant did not believe that Mr. Saunders had a mental or physical condition which had any bearing on the crimes with which he was charged.
*1046 “c. As your declarant understood the law which prevailed at the time of trial, the report of an appointed psychiatrist was not confidential and could be an effective prosecution tool. Counsel for co-defendant Joshua Hill made such a motion which was denied by the Court in your declarant’s presence.”
c. The traverse
In his traverse to the return petitioner takes issue with certain allegations made in the return and attached declaration.
First, he points out that counsel could not very well have made a “tactical” decision as to a diminished capacity defense based upon “all of the information of petitioner’s prior medical history” (see fn. 9, ante) because the medical records were not sent by Dr. Merin until the last day of the guilt trial. (See Part 1, pars. (5) and (6), ante.)
Second, in relation to the quantity and quality of information which counsel did have at the time of his “tactical” decision—and specifically in answer to counsel’s allegations concerning telephone conversations between him and Mrs. Saunders prior to trial[11]-—petitioner offers the declaration of his mother to the general effect that none of her telephone conversations with trial counsel involved extensive inquiry on his part as to petitioner’s medical and phychiatric condition.[12]
Third, and also apropos the extent of information possessed by counsel at the time of his decision not to raise any issue of diminished capacity, petitioner offers his own declaration. He there reiterates the allegation made in his original declaration (i.e., that attached to the petition, summarized above) to the effect that, according to petitioner’s recollection and belief, counsel did not discuss his past medical history with him prior to the trial. Moreover, he alleges that counsel never requested that he, petitioner, secure *1047 his medical records for counsel;[13] that he sent for the records on his own initiative because when he mentioned the matter of psychiatric disorder to counsel prior to trial he felt that counsel did not believe him; and that after he had sent for the records and had mentioned that fact to counsel in a letter (see Part 1, par. (4), ante), the subject of medical and psychiatric background was not mentioned again until 1966 when the matter was on appeal (see Part 1, par. (13), ante).
Fourth and finally, the traverse and attached declarations challenge counsel’s alleged reasons why petitioner was not examined by a court-appointed psychiatrist. In paragraph 9 of trial counsel’s declaration (set forth, ante) it is alleged that such examination was not sought “[a]s a matter of strategy” because admissions made to such a psychiatrist might be used against petitioner at trial; that the “entire thrust of the defense” was to keep admissions of petitioner out of evidence; that the prevention of statements to a psychiatrist was consistent with this plan; and that the efficacy of this strategy was untarnished until codefendant Madorid, to counsel’s surprise and contrary to his expectations, took the stand and implicated petitioner. Petitioner’s challenge to this justification consists of (1) his own declaration to the effect that counsel advised him prior to trial that Madorid would testify, (2) the declaration of Madorid’s counsel to the effect that he notified “both counsel for the other two defendants” that Madorid would testify, and (3) the declaration of codefendant Hill’s counsel to the effect that he was aware prior to trial that Madorid would testify.
5. The Legal Issue
In a habeas corpus proceeding the return to the writ or order to show cause alleges facts tending to establish the legality of the challenged detention and is analogous to the complaint in a civil proceeding. (In re Masching (1953) 41 Cal.2d 530, 533 [261 P.2d 251]; In re Egan (1944) 24 Cal.2d 323, 330 [149 P.2d 693]; In re Collins (1907) 151 Cal. 340, 342-343 [90 P. 827, 91 P. 397].) The traverse, and the petition where by stipulation or acquiescence it is treated as a traverse (see In re Stafford (1958) 160 Cal.App.2d 110, 113 [324 P.2d 967]), are analogous to the answer in a civil proceeding, and the petitioner “may deny or controvert any of the material facts or matters set forth in the return ... or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge. . . .” (Pen. Code, § 1484; see also In re Masching, supra; In re Egan, supra; In re Collins, supra.) The issues are joined in this manner, and “new matter set up in the petition [and traverse] which tends to invalidate the apparent effect of the process set forth in the return is deemed denied and must be proved by the party *1048 alleging it, namely the petitioner.” (In re Masching, supra, at p. 533.) Moreover, the petitioner may “except to the sufficiency” (Pen. Code, § 1484) of the return in his petition and traverse, thus raising questions of law in a procedure analogous to demurrer. When the return effectively acknowledges or “admits” allegations in the petition and traverse which, if true, justify the relief sought, such relief may be granted without a hearing on the other factual issues joined by the pleadings. (See In re Masching, supra, at p. 533; see generally Witkin, Cal. Criminal Procedure (1963) § 825, pp. 790-791.)
Although the summary which we have entitled The Disputed Facts manifests that several factual issues are joined by the pleadings herein, certain matters are established by the record because either they are alleged in the return and not controverted by petitioner or they are specifically admitted in the return.
Thus, it is established that counsel, at some time prior to petitioner’s trial, made a decision to exclude or withhold the issue of petitioner’s diminished capacity from the trial; that this decision was made with full knowledge of the doctrine of diminished capacity and with awareness of its possible application to the case (cf. In re Williams, supra, 1 Cal.3d 168; Peopled. McDowell, supra, 69 Cal.2d 737); and that counsel had “tactical” and “strategic” reasons for this decision which were, in his judgment, compelling.
It is also established, however, that counsel’s decision was made without the benefit of substantial factual inquiry into the specifics of petitioner’s mental condition. Although counsel was advised some two months prior to trial that petitioner had earlier sustained head injuries which resulted in organic brain damage, and although he spoke briefly with petitioner and his mother about the matter, he undertook no serious efforts to obtain available medical reports reflecting past diagnosis and treatment. Moreover, he made no effort to have petitioner examined by a psychiatrist, even though petitioner’s mother had volunteered to pay for the services of a private defense psychiatrist in the matter. In short, the record establishes beyond dispute that counsel made the decision not to raise the issue of diminished capacity wholly without the benefit of medical opinion in the matter and with full knowledge that medical reports were in existence.
We have concluded on the basis of this record and of the legal authorities already discussed that counsel’s failure to undertake careful factual inquiries and investigations concerning the matter of petitioner’s diminished capacity to commit the crimes charged against him operated to *1049 deny petitioner the right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.
Although counsel’s decision not to raise the defense of diminished capacity on petitioner’s behalf was made for “tactical” and “strategic” reasons sufficient in counsel’s judgment to support it, in the circumstances of this case the failure of counsel to avail himself of information relevant to the defense removed all rational support from that decision. We cannot say, of course, what such further inquiry might have revealed. Indeed, if counsel had sought to obtain other available records and had undertaken to have petitioner examined by a psychiatrist he might well have properly concluded on the basis of information so obtained to withhold any defense based upon petitioner’s mental condition at the time of the offense. On the other hand, such investigation might have produced evidence upon the basis of which counsel would have wished to present a defense. By failing to make any effort at all to follow the lead afforded by information in his possession counsel precluded himself from making a rational decision on the question. It must therefore be concluded on this record that the possible defense of diminished capacity “was withheld not through deliberate though faulty judgment, but in default of knowledge that reasonable inquiry would have produced, and hence in default of any judgment at all.” (Brubaker v. Dickson, supra, 310 F.2d 30, 39.)
Moreover, the possible defense so withheld must be termed a “crucial” one—especially in view of the insubstantiality of the defense actually offered. (See People v. Ibarra, supra, 60 Cal.2d 460, 464; In re Williams, supra, 1 Cal.3d 168, 175, 177; Brubaker v. Dickson, supra, 310 F.2d 30, 38-40.) Clearly a defense based upon petitioner’s mental condition was in no way inconsistent with the defense offered by counsel.
For the foregoing reasons it is clear on the record before us that petitioner did not receive the effective assistance of counsel to which he was entitled under the United States Constitution. (See Part 3, ante.) The judgment of conviction must be vacated.
The writ is granted. The remittitur issued October 14, 1969, in Crim. 9126 (People v. Hill and Saunders (1967) 66 Cal.2d 536 [58 Cal.Rptr. 340, 426 P.2d 908]) is recalled as to appellant James William Saunders and that portion of the judgment entered against him in the Superior Court of Los Angeles County on April 7, 1965 (Superior Court Crim. No. 294615) not reversed in Crim. 12125 (In re Saunders (reported sub nom. *1050 In re Hill) (1969) 71 Cal.2d 997 [80 Cal.Rptr. 537, 458 P.2d 449) is reversed as to appellant Saunders.
Wright, C. J., Peters, J., Tobriner, J., and Burke, J., concurred.

 We granted the same relief as to petitioner’s codefendant Hill.

 Although the basic facts here stated are undisputed, the circumstances surrounding these facts are the subject of considerable dispute and will be treated below.

 The facts of the crime are fully stated in People v. Hill and Saunders, supra, 66 Cal.2d 536, 542-547. In brief, petitioner and his codefendants Hill and Madorid robbed a Hollywood liquor store and killed the clerk.

 It appears that the letter and reports were sent at the request of petitioner’s parents.

 The People introduced no evidence in aggravation of penalty during the penalty proceedings. (See Pen. Code, § 190.1.) .....

 In the interests of completeness and perspective the foregoing summary of undisputed factual material has included matters relating to the first penalty trial.

Cases involving a failure to make those careful factual and legal inquiries and investigations necessary to a constitutionally adequate defense are to be distinguished, of course, from cases wherein counsel, having made such inquiries and investigations, makes tactical or strategic decisions—whether wise or unwise when viewed with the benefit of hindsight—which cause him not to utilize the fruits of his labors. (See People v. Reeves (1966) 64 Cal.2d 766, 772-775 [51 Cal.Rptr. 691, 415 P.2d 35[; People v. Robillard (1960) 55 Cal.2d 88, 96-98 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; People v. Glover (1967) 257 Cal.App.2d 502, 507-509 [65 Cal.Rptr. 219].) When, however, the knowledge necessary to an informed tactical or strategic decision is absent because of counsel’s ineptitude or lack of industry, no such ground of justification is possible. (In re Williams, supra, 1 Cal.3d 168, 177.)

 As we have indicated above (see text accompanying fn. 6, ante), the matter here sought to be urged is moot as to penalty issues,

 The return also alleges on the basis of trial counsel’s declaration (set forth, infra) that counsel “has declared under penalty of perjury that he did have all of the information of petitioner’s prior medical history before making a tactical decision that the information would be of no assistance in the trial of the case, . . .”

 Ben Madorid was one of petitioner’s codefendants. “His testimony constituted a judicial confession as to him and, standing alone, implicated Hill and Saunders sufficiently to support their convictions if properly presented to the jury.” (People v. Hill, supra, 66 Cal.2d 536, 555.)

 See paragraph 7 of trial counsel’s declaration.

 Mrs. Saunders’ declaration stated: “To the best of my memory I received about four (4) telephone calls—collect—from [trial counsel], [Par.] The first was letting me know that he was representing James W. Saunders. I asked him to request James medical records as an Attorney because they would not give them personaly [mc] to me—as James had asked me to get them for him. [Trial counsel] did not request them and I had to have Dr. Merin forward them directly to [trial counsel] which he did. I also told [trial counsel] that I would pay for any Medical Examinations that James needed for the trial. However, I did not receive a bill from any Doctor regarding this. [Par.] The second was about two (2) weeks before the trial saying that it would be advisable if I came to the trial. I said I would be there at the start [and] would leave for Los Angeles on March 7th 1965. [Par.] The third (3) call was a half hour before I had to catch the plane for Los Angeles the night of March 7th and he told me not to come that it would not be necessary for me to be there as I would do more harm than good. [Par.] The fourth was on Friday March 11, 1965 letting me know the descision [sic] of the Jury.”

 Cf. paragraph 6 of trial counsel’s declaration.