[No. S032489. Jan. 19, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY CLIFFORD DUVALL, Defendant and Appellant.

In re ROY CLIFFORD DUVALL on Habeas Corpus.

**COUNSEL**

J. Bradley O'Connell, under appointment by the Supreme Court, and Sally McGough, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama and Ronald A. Bass, Assistant Attorneys General, Stan M. Helfman, Gerald A. Engler and Morris Beatus, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LUCAS, C. J.**—We granted review in this case to address certain procedural rules governing petitions for writs of habeas corpus in this state. Specifically, we are concerned here with the legal sufficiency of the People's return to an order to show cause that was issued by the Court of Appeal. As we explain, although we agree with the appellate court's interpretation of prior case law applicable to habeas corpus petitions, the modern expansion of the availability of relief on habeas corpus—as illustrated by the facts of this case—justify a clarification of the pleading rules applicable to such petitions. Applying that clarification here, we remand this case to the Court of Appeal with directions to appoint a referee and order an evidentiary hearing in this case.

### FACTS AND PROCEDURE

On February 13, 1991, defendant was at the home of victim Rubin Flores, cutting wood. Defendant asked for a kiss from Flores's wife, Rosemarie, and became angry when she refused. The next day, defendant was again at the Flores home. Also present were Rosemarie as well as other friends, including Kevin Trout. Most of those present were drinking beer; Trout estimated that defendant and Flores each drank more than six beers that day. In addition, both Flores and defendant took a muscle relaxant, later identified as carisoprodol.

Flores gave defendant a white-handled pocketknife as a "friendship Valentine present." Despite this gesture of hospitality, tensions rose during the course of the day. Rosemarie became annoyed when defendant increased the volume on the stereo. Later, she declined defendant's renewed request for a kiss. Flores became visibly upset at defendant's attention toward Rosemarie. Trout suggested that the men go to his house to cool off.

At Trout's home, the group continued to drink beer; defendant and others also drank tequila. Defendant and Flores walked across the street to the home of Gary and Etta Harness. Etta testified that Flores staggered around her house, and was apparently quite drunk. Defendant was not staggering, but his speech was slurred. Flores and defendant returned to Trout's home,

where Flores spent an hour talking to his wife on the telephone. Rosemarie heard defendant and her husband arguing in the background about the kissing incident and then the line went dead. Rosemarie took the children to her mother's house, leaving Flores a note saying she would call him the next day when he was sober.

Flores was upset about his conversation with Rosemarie. Eventually, Trout drove defendant, Flores, and another man (Gessler) back to Flores's house. Trout watched as defendant and Flores began arguing on the front porch; Trout could hear that the men were arguing about defendant's behavior toward Rosemarie. Suddenly a knife appeared in defendant's hand and he began stabbing Flores in a "hook motion." Trout did not see any weapon in Flores's hand. Gessler also saw defendant stabbing Flores, and confirmed Flores was unarmed.

When Trout and Gessler intervened, Flores exclaimed that defendant had stabbed him. Defendant ran off and was arrested later at a nearby motel. The motel's manager testified that defendant had a slash wound on his leg, but he appeared calm and his speech was normal. The arresting officer testified that although defendant smelled strongly of alcohol, his speech was not slurred and he was able to stand up straight. The treating physician gave similar testimony.

A blood sample drawn three hours after the crime showed defendant's blood-alcohol content was .20 percent; a prosecution expert opined that this meant defendant's blood-alcohol level was .26 percent at the time of the crime. The blood sample also showed the presence of carisoprodol as well as meprobamate, a metabolite of carisoprodol. Rubin Flores died of his wounds.

Defendant did not testify, but relied on a theory of self-defense, emphasizing his own leg wound as evidence that Flores was armed. Police found three other knives in the general area of the crime, but there was no direct evidence showing Flores had wielded any of them. Defense counsel's theory was that defendant, reasonably or unreasonably, believed he was defending himself against an enraged and drunken victim. Defense counsel argued Flores must have had a knife that was never recovered, suggesting that Trout may have taken the knife away with him; Trout expressly denied this. A jury convicted defendant of second degree murder.

Defendant challenged his conviction in the Court of Appeal by filing both an appeal and a petition for a writ of habeas corpus. In his habeas corpus petition, he contended that defense counsel was constitutionally ineffective

for failing to adequately investigate and present a defense based on intoxication. Defendant submitted his own declaration stating counsel was aware defendant was intoxicated at the time of the crime, but that counsel never discussed an intoxication defense with him. These facts were essentially corroborated in a declaration by the defense investigator, Chuck Harrington. This showing was supplemented by a letter from Dr. Ronald Siegel, who opined that the combination of alcohol and carisoprodol "could have been sufficient to catapult the defendant into a state of confusional delirium marked by disinhibition and maladaptive behavior." According to Siegel, such a drug/alcohol-induced state would allow the petitioner to appear calm and goal-directed because he would be responding to a "confused version of reality." Defense counsel died sometime after trial.

The Court of Appeal consolidated the direct appeal with the habeas corpus petition and asked the Attorney General for informal opposition to the habeas corpus petition. (See Cal. Rules of Court, rule 60.) After receiving the People's opposition, the Court of Appeal issued an order to show cause (hereafter OSC), instructing the Director of Corrections (hereafter sometimes respondent) to show cause why relief should not be granted. The Court of Appeal specifically cited *In re Sixto* (1989) 48 Cal.3d 1247, 1252 [259 Cal.Rptr. 491, 774 P.2d 164] (hereafter *Sixto*), and *In re Lewallen* (1970) 23 Cal.3d 274, 278 and footnote 2 [152 Cal.Rptr. 528, 590 P.2d 383, 100 A.L.R.3d 823] (hereafter *Lewallen*), thereby presumably placing respondent on notice of the language in those cases disapproving general denials in the return.

The Attorney General, representing respondent Director of Corrections, then filed his return to the OSC. (See Pen. Code, § 1480.)[1] Here reproduced in full, it stated: "Come now the People of the State of California and, for a Return o[f] this Court's Order to Show Cause, state: [¶] I. [¶] Petitioner is lawfully in the custody of the Department of Corrections and is serving a term of 17 years to life for murder and enhancements for personal weapon use and a prior prison term. The procedural and factual history of the challenged conviction are set forth in the Respondent's Brief filed in petitioner's pending direct appeal (A054254) [¶] II. [¶] Respondent admits the allegations of paragraphs one through six, nine, and twelve through sixteen of the Petition, and denies the allegations of paragraphs seven through eleven of the Petition. Specifically, respondent denies that petitioner received ineffective assistance of counsel in connection with his defense, or that any act or omission by his trial counsel prejudiced the defense [¶] III. [¶] Except as specifically admitted herein, respondent denies each and every material allegation in the Petition. [¶] WHEREFORE, respondent prays that the

---

[1]Subsequent statutory references are to this code unless otherwise stated.

Order to Show Cause be discharged and that the Petition be denied." (Fn. omitted.) In a footnote, the return stated: "We request this Court to take judicial notice of its file in direct appeal A054254."

Accompanying the return was (1) a verification, signed by the deputy attorney general who prepared the return (see § 1480, subd. 5), and (2) a memorandum of points and authorities. The latter document begins: "We hereby incorporate by reference and make a part of this Return the Respondent's Brief filed in direct appeal [No.] A054254. In addition, we add the following . . . ." Respondent then set forth three legal arguments: (1) defendant failed to show that his trial counsel's decision to forego an intoxication defense was not based on a valid tactical decision; (2) even if the omission constituted inadequate representation, there was no prejudice; and (3) "the matter should be remanded to the trial court for an evidentiary hearing on disputed factual issues relating to deficient attorney performance and prejudice." (Capitalization altered.)

Under the third heading in the memorandum of points and authorities, respondent stated he: "denies allegations [in the petition] based on the declaration of [defendant], who claims never to have discussed the matter of a mental defense with his attorney. Such declarations are 'subjective, self-serving, and, by [themselves], insufficient to satisfy the *Strickland* test for prejudice.' (*In re Alvernaz* (1992) 2 Cal.4th 924, 939 [8 Cal.Rptr.2d 713, 830 P.2d 747].)" (See *Strickland* v. *Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674, 104 S.Ct. 2052].) In a footnote, respondent stated: "We also dispute the factual allegations of trial counsel's investigator in this case, Chuck Harrington." Arguing that respondent had not had the "opportunity to test the opinions of any defense expert, or offer its own expert's opinion, on the effect of alcohol and muscle relaxant on [defendant]," respondent requested the matter be remanded for an evidentiary hearing.

After considering the factual allegations raised in defendant's habeas corpus petition, the return, and the traverse, and without ordering an evidentiary hearing, the Court of Appeal issued a writ of habeas corpus and reversed defendant's conviction. In so doing, the appellate court concluded: (1) the respondent's return to the show cause order was insufficient, containing only a general denial of the factual allegations in defendant's petition; (2) consequently, there were no contested material facts that would require an evidentiary hearing for resolution; and (3) deeming true defendant's factual allegations, he was entitled to relief. These three conclusions by the Court of Appeal form the basis of the present controversy.

## DISCUSSION

Respondent argues the Court of Appeal misperceived the pleading requirements applicable in habeas corpus proceedings. Because the number of

habeas corpus petitions filed in this state and with the appellate courts has grown dramatically in recent times (see *In re Harris* (1993) 5 Cal.4th 813, 826, fn. 4 [21 Cal.Rptr.2d 373, 855 P.2d 391] [hereafter *Harris*]), proper understanding of the procedural requirements applicable to habeas corpus petitions is of statewide concern. Accordingly, we begin by summarizing the applicable procedural requirements.

A. *A Summary of Habeas Corpus Procedure*

Our state Constitution guarantees that a person improperly deprived of his or her liberty has the right to petition for a writ of habeas corpus. (Cal. Const., art. I, § 11; see *In re Clark* (1993) 5 Cal.4th 750, 764 & fn. 2 [21 Cal.Rptr.2d 509, 855 P.2d 729] [hereafter *Clark*].) ■ Because a petition for a writ of habeas corpus seeks to collaterally attack a presumptively final criminal judgment, the petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove* them. "For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended." (*People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1260 [275 Cal.Rptr. 729, 800 P.2d 1159], italics in original [hereafter *Gonzalez*].)

■ To satisfy the initial burden of pleading adequate grounds for relief, an application for habeas corpus must be made by petition, and "[i]f the imprisonment is alleged to be illegal, the petition must also state in what the alleged illegality consists." (§ 1474, subd. 2.) The petition should both (i) state fully and with particularity the facts on which relief is sought (*People* v. *Karis* (1988) 46 Cal.3d 612, 656 [250 Cal.Rptr. 659, 758 P.2d 1189] [hereafter *Karis*]; *In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793]), as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. (*Harris, supra,* 5 Cal.4th at p. 827, fn. 5; *Clark, supra,* 5 Cal.4th at p. 791, fn. 16.) "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing." (*Karis, supra,* at p. 656.) We presume the regularity of proceedings that resulted in a final judgment (*In re Bell* (1942) 19 Cal.2d 488, 500 [122 P.2d 22]), and, as stated above, the burden is on the petitioner to establish grounds for his release. (*Gonzalez, supra,* 51 Cal.3d at p. 1260; *In re Williams* (1920) 183 Cal. 11, 14 [190 P. 163]; *In re McVickers* (1946) 29 Cal.2d 264, 285 [176 P.2d 40] (conc. & dis. opn. of Spence, J.); *In re Oxman* (1950) 100 Cal.App.2d 148, 151 [223 P.2d 66].)

■ An appellate court receiving such a petition evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner

would be entitled to relief. (*Clark, supra*, 5 Cal.4th at p. 769, fn. 9; *In re Lawler* (1979) 23 Cal.3d 190, 194 [151 Cal.Rptr. 833, 588 P.2d 1257] [hereafter *Lawler*].) If no prima facie case for relief is stated, the court will summarily deny the petition. If, however, the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an OSC. (*Clark, supra*, at p. 781, fn. 16; *In re Hochberg* (1970) 2 Cal.3d 870, 875, fn. 4 [87 Cal.Rptr. 681, 471 P.2d 1].) "When an order to show cause does issue, it is limited to the claims raised in the petition and the factual bases for those claims alleged in the petition. It directs the respondent to address only those issues." (*Clark, supra*, at p. 781, fn. 16.) Issuance of an OSC, therefore, indicates the issuing court's *preliminary assessment* that the petitioner would be entitled to relief if his factual allegations are proved.

We have consistently followed this procedure when evaluating habeas corpus petitions. (See, e.g., *People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1272 [278 Cal.Rptr. 640, 805 P.2d 899]; *People* v. *Williams* (1988) 44 Cal.3d 883, 936, fn. 30 [245 Cal.Rptr. 336, 751 P.2d 395]; *Lawler, supra*, 23 Cal.3d at p. 194; see also *People* v. *Miranda* (1987) 44 Cal.3d 57, 119, fn. 37 [241 Cal.Rptr. 594, 744 P.2d 1127] [limiting issues in OSC "was an implicit determination that in his petition for habeas corpus defendant failed to make a prima facie case as to the other issues presented"]; *Gonzalez, supra*, 51 Cal.3d at p. 1240 [amending OSC to eliminate issues implies petition failed to state prima facie case with respect to those issues].) In doing so, we have explained that the OSC, "although not expressly provided for in the statutes governing the writ, has developed as an appropriate means by which to initiate a hearing and disposition of a [habeas corpus] petition on behalf of a person in custody without the necessity of bringing the petitioner before the court." (*Lawler, supra*, at p. 194; see *In re Romero* (1994) 8 Cal.4th 728, 738 [35 Cal.Rptr.2d 270, 883 P.2d 388] [hereafter *Romero*]; *In re Hochberg, supra*, 2 Cal.3d at pp. 873-874, fn. 2.)

Issuance of an OSC signifies the court's preliminary determination that the petitioner has pleaded sufficient facts that, if true, would entitle him to relief. ■ The Penal Code then contemplates the custodian of the confined person shall file a responsive pleading, called a return, justifying the confinement. (§ 1480.) Historically, the required contents of the return were not very extensive.[2] This probably is attributable to the fact that as originally conceived, relief on habeas corpus was limited to a claim that the petitioner

---

[2]Section 1480 states: "The person upon whom the writ is served must state in his return, plainly and unequivocally:

"1. Whether he has or has not the party in his custody, or under his power or restraint;

"2. If he has the party in his custody or power, or under his restraint, he must state the

was confined pursuant to the judgment of a court that lacked jurisdiction. (*Harris, supra*, 5 Cal.4th at p. 836; *Ex parte Long* (1896) 114 Cal. 159 [45 P. 1057].) "[T]his strict jurisdictional view . . . has changed over the years" (*Harris, supra*, at p. 836), and the function of habeas corpus has evolved to permit judicial inquiry into a variety of constitutional and jurisdictional issues. (See generally, 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Extraordinary Writs, § 3331(a), p. 4125 [hereafter Witkin & Epstein] ["the functions of habeas corpus have been changed in recent years by decisions substituting the test of fundamental unfairness for the jurisdictional test"].)

As a result of this evolution, this court has required more of the return than mere compliance with the literal language of section 1480; we have required the return to "allege *facts* tending to establish the legality of petitioner's detention." (*Sixto, supra*, 48 Cal.3d at p. 1252, italics added; see *Romero, supra*, 8 Cal.4th at p. 738 ["The return . . . must allege facts establishing the legality of the petitioner's custody."]; *Lawler, supra*, 23 Cal.3d at p. 194 [return must allege facts]; *In re Saunders* (1970) 2 Cal.3d 1033, 1047 [88 Cal.Rptr. 633, 472 P.2d 921] [hereafter *Saunders*] ["In a habeas corpus proceeding the return . . . alleges facts tending to establish the legality of the challenged detention."].) Those facts are not simply the existence of a judgment of conviction and sentence when the petitioner challenges his restraint in prison. The factual allegations of a return must also respond to the allegations of the petition that form the basis of the petitioner's claim that the confinement is unlawful. (*Romero, supra*, 8 Cal.4th at p. 738; *People* v. *Pacini* (1981) 120 Cal.App.3d 877, 884 [174 Cal.Rptr. 820].)[3] In addition to stating facts, the return should also, "where appropriate, . . . provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed." (*Lewallen, supra*, 23 Cal.3d at p. 278, fn. 2.)

■ Following the filing of the return, the habeas corpus petitioner responds to the facts pleaded therein in a pleading called a traverse. The

authority and cause of such imprisonment or restraint;

"3. If the party is detained by virtue of any writ, warrant or other written authority, a copy thereof must be annexed to the return, and the original produced and exhibited to the Court or Judge on the hearing of such return;

"4. If the person upon whom the writ is served had the party in his power or custody, or under his restraint, at any time prior or subsequent to the date of the writ of habeas corpus, but has transferred such custody or restraint to another, the return must state particularly to whom, at what time and place, for what cause, and by what authority such transfer took place;

"5. The return must be signed by the person making the same, and, except when such person is a sworn public officer, and makes such return in his official capacity, it must be verified by his oath."

[3]We emphasize the People's burden at this point is one of pleading, not proof. A habeas corpus petitioner who seeks to overturn a presumptively valid criminal judgment in a collateral attack retains the heavy burden *to prove* the facts that he or she claims justify relief. At this early pleading stage, however, we have required the People to set forth, in their return, facts responsive to the factual allegations in the original petition for a writ of habeas corpus.

requirement that the return allege facts responsive to the petition is critical, for the factual allegations in the return are either admitted or disputed in the traverse and this interplay frames the factual issues that the court must decide. Facts set forth in the return that are not disputed in the traverse are deemed true. (*Lawler, supra,* 23 Cal.3d at p. 194.) Conversely, "[w]hen the return effectively acknowledges or 'admits' allegations in the petition and traverse which, if true, justify the relief sought, such relief may be granted without a hearing on the other factual issues joined by the pleadings." (*Saunders, supra,* 2 Cal.3d at p. 1048.)

To respond to the return, the habeas corpus petitioner may either file a traverse or the parties may stipulate that the original habeas corpus petition be treated as a traverse. (*Lawler, supra,* 23 Cal.3d at p. 194; *In re Masching* (1953) 41 Cal.2d 530, 533 [261 P.2d 251]; 6 Witkin & Epstein, *supra,* § 3377(c), p. 4182 ["Instead of making further allegations in support of his demand for relief, the petitioner, by stipulation or acquiescence, may rely on his original (habeas corpus) petition as a traverse."]; cf. *In re Stafford* (1958) 160 Cal.App.2d 110, 113 [324 P.2d 967] [habeas corpus petitioner did not stipulate that petition be treated as traverse].)

■ Three important rules govern the traverse. First, as stated above, "[t]he factual allegations of the return *will be deemed true unless the petitioner in his traverse denies the truth of the respondent's allegations* and either realleges the facts set out in his petition, or by stipulation the petition is deemed a traverse." (*Lawler, supra,* 23 Cal.3d at p. 194, italics added; see also *Karis, supra,* 46 Cal.3d 612, 656; *In re Love* (1974) 11 Cal.3d 179, 183 [113 Cal.Rptr. 89, 520 P.2d 713]; *Saunders, supra,* 2 Cal.3d at pp. 1047-1048.) Thus, if a habeas corpus petitioner fails to reassert factual allegations in the traverse, stipulate that the petition should serve as a traverse, or except to the sufficiency of the return, "the allegations of the return are deemed admitted, and relief will be denied." (6 Witkin & Epstein, *supra,* § 3377(e), p. 4182; see *In re Gutierrez* (1934) 1 Cal.App.2d 281 [36 P.2d 712].)

Second, if the factual allegations in the return are so inadequate that the petitioner cannot answer them, "the petitioner may 'except to the sufficiency' (Pen. Code, § 1484) of the return in his . . . traverse, thus raising questions of law in a procedure analogous to demurrer." (*Saunders, supra,* 2 Cal.3d at p. 1048, see also *In re Collins* (1907) 151 Cal. 340 [90 P. 827, 91 P. 397]; 6 Witkin & Epstein, *supra,* § 3377(d), p. 4182.)[4] Like the rule requiring the respondent to raise his arguments in the return in timely

---

[4]Several prior cases have observed that the procedure of filing a return and traverse is analogous to pleadings in civil matters. (See *Sixto, supra,* 48 Cal.3d at p. 1252 [the return "is thus analogous to the complaint in civil actions"]; *Lawler, supra,* 23 Cal.3d at p. 194 [same];

fashion, however, a petitioner must also timely raise his objections to the return or he will be deemed to have waived them. (*In re Egan* (1944) 24 Cal.2d 323, 330 [149 P.2d 693] [objections to return, made for first time at evidentiary hearing, were untimely].)[5]

Third, "[although] the traverse may allege additional facts in support of the claim on which an order to show cause has issued, attempts to introduce additional claims or wholly different factual bases for those claims in a traverse do not expand the scope of the proceeding which is limited to the claims which the court initially determined stated a prima facie case for relief. [Citations.]" (*Clark, supra,* 5 Cal.4th at p. 781, fn. 16.)

"In this relatively uncomplicated manner both factual and legal issues are joined for review." (*Lewallen, supra,* 23 Cal.3d at p. 278.) This process of defining the issues is important because issues not raised in the pleadings need not be addressed. (*Sixto, supra,* 48 Cal.2d at p. 1263, fn. 2.) When, after considering the return and the traverse, the court finds material facts in dispute, it may appoint a referee and order an evidentiary hearing be held. (See, e.g., *In re Hitchings* (1993) 6 Cal.4th 97 [24 Cal.Rptr.2d 74, 860 P.2d 466] [referee appointed to hold evidentiary hearing on allegations of jury misconduct]; see also *People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1] ["In habeas corpus proceedings, there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to act in the manner complained of."].)

Conversely, "[w]here there are no disputed factual questions as to matters outside the trial record, the merits of a habeas corpus petition can be decided without an evidentiary hearing." (*Karis, supra,* 46 Cal.3d at p. 656, citing

*Saunders, supra,* 2 Cal.3d at p. 1047 [traverse is analogous to answer in civil action]; *In re Masching, supra,* 41 Cal.2d at p. 533 ["the return is to be considered as a complaint and the petition [stipulated as the traverse] as an answer"]; *In re Collins, supra,* 151 Cal. at p. 343 ["To adopt the analogy of pleadings in civil actions, the return is the complaint, the traverse is the answer."].) As explained in *Romero, supra,* 8 Cal.4th at page 739, footnote 6, the civil analogy is not completely apt, and we will not engraft on habeas corpus procedures the myriad rules and technicalities applicable to civil pleadings. We nevertheless reiterate the centrality of the return in this process and the requirement that the return state facts and respond to the factual allegations set forth in the petition.

[5]Although the procedure is mentioned in some published cases, in section 1484, and by some commentators, we have found no reported case ruling on the merits of an exception to the sufficiency of a return to a habeas corpus petition. The absence of a published opinion dealing with this procedure in depth is likely due to the fact that appellate courts usually decide such motions without an opinion. Evidence of such action is thus found in the minutes of the court. (See, e.g., *In re Stanley Williams on Habeas Corpus,* Supreme Ct. Mins., May 23 1990 [order sustaining habeas corpus petitioner's exceptions to the sufficiency of the return]; *In re Hitchings on Habeas Corpus,* Supreme Ct. Mins., Feb. 15, 1990 [same].)

*Lewallen, supra,* 23 Cal.3d at p. 278; see also, *People* v. *Frierson* (1979) 25 Cal.3d 142, 160 [158 Cal.Rptr. 281, 599 P.2d 587] ["The pleadings . . . furnish sufficient uncontested information to resolve the issue without resort to a reference for an evidentiary hearing."].) Thus, "[w]hen the return effectively admits the material factual allegations of the petition and traverse by not disputing them, we may resolve the issue without ordering an evidentiary hearing." (*Sixto, supra,* 48 Cal.3d at p. 1252.)

### B. *The Proscription Against General Denials in the Return*

We have described how the return to an OSC has evolved from its historic origins and how modern cases have required that the return allege facts that respond to the factual allegations in the habeas corpus petition. As will appear, past decisions by this court confirm that the practice of filing a return containing only general denials is disapproved.

Previous decisions have explained that filing a return containing general denials indicates the People's "willingness to rely on the record." (*Lewallen, supra,* 23 Cal.3d at p. 278; see also *Harris, supra,* 5 Cal.4th at p. 823, fn. 2 [by effectively admitting the factual allegations in the petition, no evidentiary hearing is required]; *Sixto, supra,* 48 Cal.3d at p. 1252 [same].) Because this rule results in the somewhat confounding situation of transforming a denial, albeit a general one, into an admission of sorts, we turn to the evolution of the rule.

The basic rule was established in *Lewallen, supra,* 23 Cal.3d 274. In that case, the petitioner set forth facts in his habeas corpus petition alleging that when the trial court sentenced him, it improperly relied on his rejection of an offered plea bargain and his decision to go to trial. We issued an OSC, finding the petitioner stated a prima facie case for relief. The respondent's return, however, "offer[ed] nothing more in support of their claim that petitioner's confinement is lawful than a general denial of his [factual] allegation[s] . . . . By alleging only a conclusionary statement of ultimate fact in their return, the People have indicated a willingness to rely on the record." (*Id.* at p. 278.) Accordingly, we found no "disputed factual questions as to matters outside the trial record [and] the merits of petitioner's claim can be reached without ordering an evidentiary hearing." (*Ibid.,* fn. omitted.)

In a footnote following the foregoing passage, we specifically cautioned the respondent regarding the danger of relying on general denials in their return, saying: "We emphasize our disapproval of the practice of setting out in a return to an order to show cause mere general denials of a habeas corpus

petition's allegations. Because the issuance of an order to show cause reflects the issuing court's determination that the petition states facts which, if true, entitle the petitioner to relief [citations], *the respondent should recite the facts upon which the denial of petitioner's allegations is based, and, where appropriate, should provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed.*" (*Lewallen, supra,* 23 Cal.3d at p. 278, fn. 2, italics added.)

*Sixto, supra,* 48 Cal.3d 1247, relied on *Lewallen, supra,* in resolving a habeas corpus matter without an evidentiary hearing. In that case, the petitioner, an illiterate farm worker, was convicted of murder and various sex crimes. In his habeas corpus petition, he claimed he was denied the effective assistance of counsel in several respects. We issued an OSC based on three of his allegations, namely: "the failure to investigate petitioner's blood-alcohol level, the failure to adequately investigate the defense of diminished capacity based on PCP intoxication, and the failure to adequately investigate available evidence of petitioner's good character for the penalty phase." (*Id.* at p. 1251.) The respondent filed a return that did not dispute the material facts alleged by the petitioner. (*Ibid.*) We then applied the rule that the respondent is deemed to have admitted those material factual allegations that they fail to dispute (*id.* at p. 1252), and thereafter decided we could "resolve the issues joined by the pleadings without an evidentiary hearing." (*Ibid.*) *Sixto* was cited with approval in *Harris, supra,* 5 Cal.4th at page 823. (Cf. *In re Bower* (1985) 38 Cal.3d 865, 873 [215 Cal.Rptr. 267, 700 P.2d 1269] [citing *Lewallen* with approval in case in which People had the burden to rebut presumption of prosecutorial vindictiveness].)

■ By failing to allege facts demonstrating the lawfulness of the challenged detention, a return containing only general denials is deficient in two important ways. First, such a return fails to fulfill its function of narrowing the facts and issues to those that are truly in dispute. (*Lewallen, supra,* 23 Cal.3d at p. 278, fn. 2.) This is important because an appellate court will order an evidentiary hearing and appoint a referee only if it finds material facts are in dispute. (*Romero, supra,* 8 Cal.4th at pp. 739-740.)

Second, failure to allege facts in the return prevents a habeas corpus petitioner from controverting those facts in his or her traverse. The traverse becomes a useless pleading, unable to assist the court in sharpening the issues that must be decided in a reference hearing. It becomes impossible for an appellate court to determine whether or not to order a reference hearing, and if so, to specify the issues on which the referee should take evidence.

Accordingly, we reiterate our disapproval of the practice of filing returns that merely contain a general denial of a habeas corpus petitioner's factual

allegations. This raises the next question we must decide: did respondent's return contain only "general denials"?

## C. *Did Respondent's Return Contain Only General Denials?*

Respondent contends that, assuming general denials are disapproved, his return was not objectionable on that ground. First, respondent asserts that his return cannot fairly be characterized as containing a general denial because a general denial is a one-sentence denial of all the allegations in a complaint. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 981, p. 409 ["A general denial is a simple, stereotyped form of statement which in one sentence denies all the allegations of the complaint."].) By contrast, he claims, his return admitted 12 of the 16 paragraphs in the habeas corpus petition and denied 4 paragraphs. (See *ante,* pp. 472-473.) Second, respondent claims he denied those paragraphs in the habeas corpus petition that "involved conclusory statements of law and assertions of untested fact based on the declarations of petitioner and the former investigator who worked on his behalf."

As we observed earlier (see *ante,* at pp. 477-478, fn. 4; see also *Romero, supra,* 8 Cal.4th at p. 739, fn. 6), the rules of civil pleading provide an imperfect analogy in this case. For normal civil pleading, a general denial is indeed permissible in many situations. (Code Civ. Proc., § 431.30, subd. (d) ["If the complaint . . . is not verified, a general denial is sufficient . . . ."]; see generally, 5 Witkin, Cal Procedure, *supra,* Pleading, § 981, p. 409.) The reason why such denials are disapproved *in the habeas corpus context,* however, is because they fail to serve the purpose of the return, i.e., to help the court identify the disputed factual issues so that it can determine whether a reference hearing is necessary. That respondent's return here did not contain a general denial as that term is defined for civil pleadings is beside the point.

In this case, the 12 paragraphs the People admitted in their return are the standard paragraphs present in all habeas corpus petitions. Thus, the People admitted the truth of the defendant's factual allegations concerning the crimes of which he was convicted, the location of his present confinement, the absence of any remedy at law, etc. The four paragraphs that were generally denied, however, are *the key paragraphs* in the petition that explain the alleged factual and legal basis for the requested relief.  Although it is true that the return specifically denied petitioner received ineffective counsel at trial, it did not indicate *the factual basis* on which the People reach that conclusion. Such assertions do not assist the appellate court in identifying the material factual issues actually in dispute. Accordingly, they may

fairly be characterized as general denials for purposes of habeas corpus pleading.

Respondent argues the narrowing function of the return was performed by both the points and authorities accompanying the return, as well as the respondent's brief in the direct appeal which he sought to incorporate by reference. Respondent claims the Court of Appeal should have been able to discern from these documents what facts he was disputing. On this point, respondent stands on firmer ground. In general, points and authorities state *legal arguments*, not *facts*, and thus will fail to narrow the factual issues that must be determined to resolve the dispute. In this case, however, although respondent's points and authorities largely proffered legal arguments, part 3 of that document stated respondent "denies allegations [in the petition] based on the declaration of [defendant], who claims never to have discussed the matter of a mental defense with his attorney. Such declarations are 'subjective, self-serving, and, by [themselves], insufficient to satisfy the *Strickland* test for prejudice.' [Citations.]" In addition, a footnote states: "[Respondent] also dispute[s] the factual allegations of trial counsel's investigator in this case, Chuck Harrington." By these assertions, it becomes clearer respondent disputed the allegations, made by defendant in his habeas corpus petition, that defendant discussed a diminished capacity defense with his trial attorney, and that the attorney directed Harrington not to investigate that issue. If this portion of the points and authorities can be deemed a part of the return, then the lower court erred in concluding respondent failed to dispute any material factual allegations in his return.

As a technical matter, it is arguable that factual allegations made in the memorandum of points and authorities, but not in the return itself, were not properly incorporated into the return. The goal, however, of the procedures that govern habeas corpus is to provide a framework in which a court can discover the truth and do justice in timely fashion. Accordingly, we should not construe the pleadings in such a parsimonious fashion. Moreover, for such technical irregularities in the pleadings in a habeas corpus proceeding, a court issuing an OSC retains the discretion to grant a party leave to amend. (Cf. Code Civ. Proc., § 576 ["Any judge, at any time before or after commencement of trial, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading . . . ."].) Retention of this power is necessary to ensure that technical and inadvertent pleading errors do not lead to premature dismissals that would frustrate the ends of justice or require holding unnecessary evidentiary hearings that would squander scarce judicial resources. If the lower court, having read the

return and the accompanying memorandum of points and authorities, entertained a doubt about whether respondent stated adequate facts to demonstrate he was contesting the truth of petitioner's factual allegations, it could have granted leave to amend the return.[6]

Although we conclude that portions of respondent's memorandum of points and authorities were sufficient to place the lower court on notice regarding those facts in dispute, respondent nevertheless fails affirmatively to state facts that contradict the factual allegations in the petition for habeas corpus. In other words, although respondent stated he denied the truth of defendant's declarations, he stated no facts that would justify holding an evidentiary hearing. Respondent contends that he should not be required to set forth such facts. We therefore next address the nature of respondent's burden of pleading in the return.

### D. *The Nature of the People's Burden*

■ Respondent first contends the Court of Appeal erred by requiring him, in his return, to carry the burden of disproving the petitioner's factual allegations. Assuming that the lower court's opinion can be so construed, we agree it erred. The People need not *prove* the habeas corpus petitioner's factual allegations are wrong; if an evidentiary hearing is held, it is the petitioner who bears the burden of proof. At this *pleading* stage, however, the general rule has been that respondent must either admit the factual allegations set forth in the habeas corpus petition, or *allege additional facts* that *contradict* those allegations. If a dispute arises regarding material facts, the appellate court will then appoint a referee to determine the true facts at a hearing in which the petitioner will have the burden of proof. At this early stage, however, the People's burden is one of pleading, not proof.[7]

Respondent declares that the fact pleading burden we reiterate today is one that, as a practical matter, may be impossible to meet in this case. He

---

[6]In cases in which an OSC has issued, we strongly encourage the People to produce a return that "stands alone," that is, a document that has the critical factual allegations contained within its four corners. As this case demonstrates, incorporating other documents by reference can obscure those factual allegations on which the People rely. We reiterate that the purpose of the return is to assist the court that issued the OSC in determining what material facts are truly disputed by the parties. Because we find sufficient indication in the points and authorities that respondent intended to dispute the petitioner's factual allegations concerning his conversations with counsel, as well as Harrington's allegations, we do not address whether the respondent's brief from the direct appeal was properly incorporated by reference into the return.

[7]We realize it is anomalous to require the People to plead facts when they will not be required to prove those facts, inasmuch as the burden of proof must be borne by the petitioner. This awkward procedural mechanism is required, however, to assist the court in determining which material facts, if any, are in dispute.

emphasizes that trial counsel is dead and is thus unavailable to confirm or deny the existence of past conversations with counsel that defendant alleges took place. Although respondent strongly suspects that defendant's factual allegations are untrue, he therefore has no facts presently at his disposal that can be alleged in the return to contradict those allegations. Thus, respondent asserts that a strict adherence to the rule requiring him to plead facts in the return poses a procedural dilemma: the People cannot obtain a hearing in which they can cross-examine defendant and his declarants without stating facts in the return, but they cannot obtain those facts without an evidentiary hearing.

This dilemma illustrates how the prior rule, as announced in *Saunders*, *supra*, 2 Cal.3d at page 1047, *Lawler*, *supra*, 23 Cal.3d at page 194, and *Sixto*, *supra*, 48 Cal.3d at page 1252, requiring respondent to plead facts, in his return, that are responsive to the petition, may be inadequate in cases in which the respondent has no easy or reasonable access to the facts, such as some claims alleging ineffective assistance of trial counsel and/or claims that hinge on the credibility of witnesses. In our experience, such attorney incompetence claims are now made almost routinely to attack alleged trial errors, no doubt at least partly due to our admonition in 1979 that "[w]here the [trial] record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance [of counsel] is more appropriately made in a petition for habeas corpus." (*People* v. *Pope*, *supra*, 23 Cal.3d at p. 426.)

Moreover, experience shows that it is not unusual for trial counsel to refuse to speak with the respondent when his or her competence is called into question. In such cases, one side to the dispute may have sole and exclusive access to the one source of information that is critical to the fair and proper resolution of the dispute. In such circumstances, it is unreasonable to expect respondent to obtain and plead such facts, on pain of what is essentially a default judgment.

We thus acknowledge the possibility that a habeas corpus petition could contain factual allegations that, under the circumstances of a particular case, would be difficult or impossible for the respondent to contradict with contrary factual allegations prior to an evidentiary hearing. If, for example, conversations are alleged to have been held in private between defense counsel and his or her client, it may be impossible to obtain and allege facts to refute the allegation, especially if counsel refuses to speak to respondent or, as here, counsel has died. In such a situation, key facts are in the sole possession of the habeas corpus petitioner. Nevertheless, respondent may harbor an honest and reasonable belief that a particular factual allegation is untrue.

In addition, proper resolution of a habeas corpus claim may hinge on the credibility of a witness. For example, in this case, the most important factual allegations in defendant's habeas corpus petition were that his trial attorney was aware that defendant was intoxicated at the time of the crime, and that counsel never discussed the matter with him. As the attorney has died, defendant is probably the only witness who can confirm these facts. Nevertheless, he must prove them before he will be entitled to relief, and such proof will necessarily entail an assessment of his personal credibility. It seems manifest that other than flatly denying the truth of these factual allegations, respondent will not be able to allege facts tending to show defendant is not credible.

In a similar vein, declarations by experts presented by a habeas corpus petitioner need not be met with counterdeclarations by experts solicited by respondent. Instead, it is sufficient for the respondent to inform the court it intends to dispute the credibility of the petitioner's expert. We reiterate that the respondent bears the burden of *pleading* facts, not *proving* them at this early stage in the proceedings. Respondent remains free, of course, to present his own expert evidence at any ensuing evidentiary hearing in an attempt to discredit or undermine the evidence of the petitioner's expert evidence.

In such cases (which, as suggested above, will often involve allegations of ineffective assistance of counsel), where access to critical information is limited or denied to one party, where it is unreasonable to expect a party to obtain information at the pleading stage, or where the proper resolution of a case hinges on the credibility of witnesses, the general rule requiring the pleading of facts should not be enforced in such a draconian fashion so as to defeat the ends of justice. When one party (respondent for the return, petitioner for the traverse) can allege: (i) he or she has acted with due diligence; (ii) crucial information is not readily available; and (iii) that there is good reason to dispute certain alleged facts or question the credibility of certain declarants, courts evaluating the return and traverse should endeavor to determine whether there are facts legitimately in dispute that may require holding an evidentiary hearing.

To assist the court in making that determination, the return should set forth with specificity: (i) why information is not readily available; (ii) the steps that were taken to try to obtain it; and (iii) why a party believes in good faith that certain alleged facts are untrue. For example, in this case, because counsel is deceased, respondent has demonstrated the impossibility of obtaining facts to counter the petitioner's allegations that he had certain conversations with his defense counsel. Had counsel been alive, respondent

could have satisfied his burden by alleging that he had an investigator contact counsel and that counsel refused to speak with the investigator. Respondent could then identify what facts he is disputing, thereby assisting the court in determining whether there are material facts in dispute to justify an evidentiary hearing. By pleading such facts, the return will fulfill its historical role of helping to narrow the contested issues for the court while holding respondent to his statutory burden of pleading.[8]

■■■ Applying that rule here, we find that, although the return may be technically deficient, its contents, coupled with the memorandum of points and authorities, demonstrate respondent has identified the facts he wishes to dispute, namely, the truthfulness and credibility of both petitioner and Harrington. Moreover, given counsel's death and respondent's arguments before this court, it appears the critical information is possessed by petitioner and is not reasonably available to respondent. Under these circumstances, applying a clarified rule requiring respondent to plead facts in the return only if reasonably available, we find that the Court of Appeal should have appointed a referee to hold an evidentiary hearing to determine the truth or falsity of petitioner's and Harrington's factual allegations regarding counsel's failure to investigate and present a defense based on petitioner's alleged diminished mental state.

## CONCLUSION

The judgment of the Court of Appeal is vacated and the matter remanded to that court with directions to appoint a referee and order an evidentiary hearing in this case.

Mosk, J., Kennard, J., and Baxter, J., concurred.

**ARABIAN, J.,** Concurring and Dissenting.—I concur in vacating the judgment of the Court of Appeal. The return alleged facts establishing the legality of defendant's custody, i.e., the presumptively valid conviction of murder and sentence to state prison for 17 years to life. It admitted some of the allegations of the petition, denied others, and identified the specific factual allegations that are in dispute. As the majority ultimately holds, this was sufficient to warrant an evidentiary hearing. I join in that holding.

I write separately to disassociate myself from the tortuous detour the majority takes from this straightforward path before finally arriving at the

---

[8]We emphasize this modification of the *Saunders-Lawler-Sixto* rule, requiring the respondent to plead facts in his return, does not relieve the petitioner, in his or her petition for a writ of habeas corpus, from alleging facts that, if true, would entitle the petitioner to relief. Because the petitioner seeks to attack a final judgment that the law presumes is valid, we still require the petitioner to allege facts that would justify relief.

correct destination. Claiming to "clarif[y]" matters (maj. opn., *ante*, at p. 470), the majority, in dicta, declares unprecedented rules, creates exceptions for those new rules, invents rules for those exceptions to the new rules, and then, rather than enforce them, simply abandons them all in favor of a commonsense result that is consistent with prior decisions. Heretofore, factual and legal issues have been joined in a "relatively uncomplicated" manner. (*In re Lewallen* (1979) 23 Cal.3d 274, 278 [152 Cal.Rptr. 528, 590 P.2d 383, 100 A.L.R.3d 823].) It should remain so.

## I.

In response to the order to show cause (OSC), the Attorney General filed a 15-page document entitled "Return to order to show cause and memorandum of points and authorities in support of return." It incorporated by reference the respondent's brief in the direct appeal which, since this proceeding and the appeal have been consolidated and both raise the same claim of ineffective assistance of counsel, was certainly appropriate. It affirmatively alleged the judgment of this case, admitted the allegations of 12 paragraphs of the petition, and denied the allegations of 4 paragraphs. In addition, it contained a two-page section captioned in bold print: "In the event this court concludes that the petition cannot be rejected as a matter of law, the matter should be remanded to the trial court for an evidentiary hearing on disputed factual issues relating to deficient attorney performance and prejudice." The facts in dispute were clearly identified. Respondent specifically denied "allegations based on the declaration of [defendant], who claims never to have discussed the matter of a mental defense with his attorney," and specifically disputed the factual allegations of the investigator and the opinions of the defense expert.

Contrary to the majority's assertion, this was not a mere "general denial" under any definition of the term. In an uncomplicated manner, the respondent clearly set forth the factual dispute. Assuming arguendo that defendant has stated a prima facie case for relief, an issue that is not before us on review and upon which I express no opinion (see *People* v. *Romero* (1994) 8 Cal.4th 728, 745, fn. 12 [35 Cal.Rptr.2d 270, 883 P.2d 388]), respondent has both alleged facts justifying defendant's custody (the judgment) and, by specifically denying the legal *and factual* basis for the claims, responded to the allegations of the petition sufficiently to warrant an evidentiary hearing on the disputed factual allegations. The majority correctly so holds.

## II.

Before reaching this holding, however, the majority meanders considerably. It departs substantially from the existing requirements that the return

"must allege facts establishing the legality of the petitioner's custody" and "must be responsive to" the grounds for the claimed illegality. (*People* v. *Romero, supra,* 8 Cal.4th at p. 738.)

The majority asserts: "Those facts are not simply the existence of a judgment of conviction and sentence when the petitioner challenges his restraint in prison. The factual allegations of a return must also respond to the allegations of the petition that form the basis of the petitioner's claim that the confinement is unlawful. (*Romero, supra,* 8 Cal.4th at p. 738; *People* v. *Pacini* (1981) 120 Cal.App.3d 877, 884 [174 Cal.Rptr. 820].)" (Maj. opn., *ante,* at p. 476.) To the extent this language implies there must be an affirmative factual recitation beyond alleging the judgment and denying specific factual allegations of the petition, nothing in the cases the majority cites (see, e.g., the language from *People* v. *Romero, supra,* 8 Cal.4th at p. 738, quoted in the previous paragraph), or anywhere else, supports this statement.

Rather than applying the "prior rule" (maj. opn., *ante,* at p. 484), the majority invents new ones. From the language of *People* v. *Romero, supra,* 8 Cal.4th at page 738, the majority divines the rule quoted in the previous paragraph and, worse yet, suggests—without claiming there is supporting authority or attempting to state a rational basis—that the return must "affirmatively . . . state facts that contradict the factual allegations in the petition," or state "facts that would justify holding an evidentiary hearing," or "*allege additional facts* that *contradict* those allegations." (Maj. opn., *ante,* at p. 483, italics in original.) Neither law nor logic supports these requirements, which is undoubtedly why the majority is compelled to create exceptions to these new rules (maj. opn., *ante,* at pp. 484-485), invent rules for the exceptions (*id.* at pp. 485-486), and ultimately abandon them all in its actual holding (thus making the discourse mere dicta). (*Id.* at p. 486.)

The majority claims that "[p]revious decisions have explained that filing a return containing general denials indicates the People's 'willingness to rely on the record,'" and cites in support *In re Lewallen, supra,* 23 Cal.3d at page 278, *In re Harris* (1993) 5 Cal.4th 813, 823, fn. 2 [21 Cal.Rptr.2d 373, 855 P.2d 391], and *In re Sixto* (1989) 48 Cal.3d 1247, 1252 [259 Cal.Rptr. 491, 774 P.2d 164]. (Maj. opn., *ante,* at p. 479.) It concedes that "this rule results in the somewhat confounding situation of transforming a denial, albeit a general one, into an admission of sorts . . . ." (*Id.* at p. 479.) "Confounding" that would certainly be, but it has never been the rule, as an examination of the three cited cases shows. In fact, only the dicta is confounding.

In *In re Harris, supra,* 5 Cal.4th 813, the petition alleged that the crimes for which the petitioner was convicted were committed the day before his

16th birthday, and therefore he was improperly tried as an adult. The return did not deny that the crimes were committed on that date, but made legal arguments why the petitioner was nonetheless not entitled to relief. Because no facts were disputed, only the legal significance of those facts, obviously we were able to " 'resolve the issue without ordering an evidentiary hearing.' " (*Id.* at p. 823, fn. 2.) In *In re Sixto, supra*, 48 Cal.3d at page 1252, the return did not "dispute[] petitioner's material factual allegations," and so we likewise were able to "resolve the issues joined by the pleadings without an evidentiary hearing." These results are unremarkable, and do not "transform[] a denial . . . into an admission . . . ." (Maj. opn., *ante*, at p. 479.)

The majority relies most heavily on *In re Lewallen, supra*, 23 Cal.3d 274. There, the defendant claimed that the trial court had relied on "improper considerations" at sentencing. (*Id.* at p. 277.) In their return, "the People offer[ed] nothing more in support of their claim that petitioner's confinement is lawful than a general denial of his allegation that the judge improperly considered his election to stand trial rather than to accept the proffered plea bargain." (*Id.* at p. 278.)[1] We said that "[b]y alleging only a conclusionary statement of ultimate fact in their return, the People have indicated a willingness to rely on the record. . . . There being no disputed factual questions as to matters outside the trial record, the merits of petitioner's claim can be reached without ordering an evidentiary hearing." (*Ibid.*) We went on to decide whether what the trial court did at sentencing was improper, and concluded it was.

This, too, is unremarkable, and not in the least confounding. There was no dispute as to what the trial court did, only whether it was improper. The People were willing to rely on the trial record, which included, no doubt, a transcript of the sentencing hearing, and to argue whether that record showed an impropriety. Since the record established the historical facts, no evidentiary hearing was needed. The only disputed issue was the legal significance of those facts.

As the majority notes, in *In re Lewallen, supra*, 23 Cal.3d at page 278, footnote 2, we also "emphasize[d] our disapproval of the practice of setting out in a return to an order to show cause mere general denials of a habeas corpus petition's allegations. . . . [T]he respondent should recite the facts upon which the denial of petitioner's allegations is based, and, where

---

[1] The majority alters this sentence by adding the bracketed word "[factual]" and changing the word "allegation" from the singular to the plural. (Maj. opn., *ante*, at p. 479.) The word "factual" is simply not there. Although the People denied the ultimate (and single) fact that the judge acted improperly, there is no hint the People denied any historical facts rather than their legal significance. Making these critical changes to the quoted language illustrates how far the majority is willing to go, and must go, to claim support for its dicta.

appropriate, should provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed." I agree. The return and traverse must play a narrowing function, and identify the specific factual matters that are in dispute and may require resolution through an evidentiary hearing. Once an OSC has issued, we expect the People to conduct a reasonable investigation of the allegations of the petition that have resulted in the OSC, and to frame the return in light of the results of that investigation. (See *People* v. *Romero, supra,* 8 Cal.4th at p. 745, fn. 11.) If the People, after an investigation, do not, in good faith, contest a particular factual allegation, the return should make that clear so that an evidentiary hearing will not be needed on that fact. The return should also provide documentary evidence where appropriate. If a document exists that shows a court or other tribunal performed certain acts, that document should be provided. If a transcript can eliminate any factual questions, it should similarly be provided. Declarations of defense counsel explaining what was and was not done, and why, if available, are encouraged. Additionally, the return should specifically state what factual allegations are disputed, as was done here.

But what "should" be done "where appropriate" must not be encrusted into illogical and unprecedented procedural requirements—with a procedural default (or the need to seek and obtain leave to amend the return) the penalty for noncompliance. Nor should this court be compelled, as a result, to create exceptions and more rules for those exceptions to try to make the system workable and reasonably just. We have never suggested a denial is an admission, or that denying specific facts evinces a willingness to rely on the record.

The majority correctly recognizes that because a judgment is presumed valid, the person challenging its validity bears the burden of proof. (Maj. opn., *ante,* at p. 474.) "The initial burden of proving guilt beyond a reasonable doubt is on the prosecution, and the panoply of rights accorded an accused person prior to his conviction supports the presumption that he is innocent. Different considerations apply, however, to collateral review of a final criminal judgment. For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended. [Citations.]." (*People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1260 [275 Cal.Rptr. 729, 800 P.2d 1159], italics in original.) The People may therefore deny the disputed facts, as they have done in this case, and force defendant to prove them at an evidentiary hearing where the witnesses' credibility can be tested by cross-examination. At such a hearing,

the People will have the opportunity, but not the obligation, to present their own evidence, including experts. They need not prove the judgment valid.

The majority nevertheless purports to impose a *pleading* requirement even though there is no *proof* requirement. Even the majority recognizes this is "anomalous." (Maj. opn., *ante*, at p. 483, fn. 7.) It is not only anomalous, it is unprecedented in the entire realm of the law to require facts be pled that need never be proven. The majority asserts that this "awkward procedural mechanism is required, however, to assist the court in determining which material facts, if any, are in dispute." (*Ibid.*) It states that "failure to allege facts in the return prevents a habeas corpus petitioner from controverting those facts in his or her traverse. The traverse becomes a useless pleading, unable to assist the court in sharpening the issues that must be decided in a reference hearing. It becomes impossible for an appellate court to determine whether or not to order a reference hearing, and if so, to specify the issues on which the referee should take evidence." (*Id.* at p. 480.)

As this case illustrates, however, there is no such uselessness or impossibility under the existing uncomplicated law, and no need for new anomalous rules. The return here disputed specific factual allegations, the traverse reasserted those allegations, the issues were thus joined. The court can readily determine which material facts are in dispute.

The majority's detour of dicta is unnecessary as well as unsupported by logic or authority. I am confident that after some initial confusion and consternation, future courts will simply follow the majority's example, and consign it to a well-deserved oblivion.

## III.

Because the majority ultimately finds the return sufficient to warrant an evidentiary hearing even though it was "technically deficient" (maj. opn., *ante*, at p. 486), I largely join in its holding. But it is too restrictive. Without explanation, the majority directs the Court of Appeal to appoint a referee and order an evidentiary hearing. That is one way to resolve the factual dispute, but not the only way. The OSC might be made returnable before the superior court, "a court designed for the trial of issues of fact . . . ." (*In re Hochberg* (1970) 2 Cal.3d 870, 874 [87 Cal.Rptr. 681, 471 P.2d 1].) This would have the additional advantage that the matter could be assigned to the trial judge. "[T]here is no judge better suited for making a determination of the issues raised in petitioner's petition than the original trial judge." (*Yokley* v. *Superior Court* (1980) 108 Cal.App.3d 622, 628 [166 Cal.Rptr. 657].)

The Court of Appeal here did not originally make the OSC returnable in the superior court, but there is no reason it should be prohibited from

amending it should it so choose. The holding today does not prohibit future appellate courts from relying on the superior court to find the facts, rather than a referee, so little damage is done beyond this case. But I would merely vacate the judgment of the Court of Appeal and remand the matter without the restrictive language.

George, J., and Stone, J.,* concurred.

Appellant's petition for a rehearing was denied March 16, 1995. Werdegar, J., did not participate therein.

---

*Presiding Justice, Court of Appeal, Second Appellate District, Division Six, assigned by the Acting Chairperson of the Judicial Council.